**Max WIDER, Appellant,**

v.

**Dale WOOTTON, Trustee of the Estate of Ronald Cohen, Appellee.**

No. 90–1129

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1990.

Rehearing Denied Sept. 6, 1990.

Philip I. Palmer, Jr., Palmer & Palmer, Dallas, Tex., for appellant.

Dale Wootton, Dallas, Tex., pro se.

Before JOHNSON, SMITH, and WIENER, Circuit Judges.

JOHNSON, Circuit Judge:

Max Wider (Wider) appeals the district court's affirmance of a judgment of the bankruptcy court in favor of Dale Wootton (Wootton), trustee of the bankruptcy estate of Ronald Cohen (Cohen). The bankruptcy court ruled that Cohen's estate could avoid certain payments made to Wider as preferential transfers under 11 U.S.C. § 547. On appeal, Wider argued that he was protected from the trustee's avoidance power by the "stockbroker defense" of 11 U.S.C. § 546(e). The district court rejected this argument. Unable to find that the district court improperly interpreted the scope of

the "stockbroker defense," this Court affirms.

## I. FACTS AND PROCEDURAL HISTORY

Ronald Cohen, the debtor in this case, engaged in the purchase and sale of securities. He was not a licensed stockbroker—his license was suspended in the mid-1970s after making discretionary trades without prior approval. Furthermore, he received a felony conviction in 1979 for making a false statement to a lending institution in order to obtain a loan. Cohen served eleven months in prison as a result of this conviction. Nonetheless, in May 1981, after his release from prison, Cohen initiated an enterprise in which he entered into stock transactions on behalf of numerous clients. Because of his unlicensed status, Cohen referred to himself as an "investment advisor," rather than a stockbroker.

In a typical stock purchase shortly after Cohen began business, a client would inform Cohen an amount the client wished to invest. Then, using his own knowledge of the stock market, Cohen would purchase securities for the client, in some cases maintaining physical possession of the certificates in a safety deposit box. Cohen would send to the client a confirmation slip, which would identify the name of the security, the date of purchase, the price per share and the total amount due. Shortly thereafter, Cohen would receive from the client a check, which Cohen would deposit into a central account with all other checks he received. Cohen would write his own check on this general account to cover the purchase of the securities. After this process was completed, Cohen received a commission on the profits he generated for the client.

In April 1983, however, Cohen altered his stock purchase procedure. To generate additional income, he began sending confirmation slips that represented fictitious purchases. Thus, clients would send Cohen checks to cover the expenses of purchases that never occurred. In turn, Cohen would use these newly acquired funds to pay off outstanding debts. At the same time, Cohen began to liquidate a large amount of the securities he held in his possession. Cohen sold perhaps as much as ten million dollars worth of securities in the period between April and August 1983, although he made a few stock purchases in the meantime.

Appellant Max Wider, a client of Cohen's since April 1982, was caught in the crossfire of this new (and fraudulent) stock purchase procedure. In July 1983, Wider received from Cohen a series of checks that represented the proceeds from several securities sales transactions. All of these checks bounced, but after a couple of weeks, Wider was able to collect the amount that was owed him.

However, in August 1983, Cohen filed for bankruptcy, and the bankruptcy court appointed a trustee, Dale Wootton. Subsequently, Wootton sued to avoid the collection payments to Wider on the basis that they were preferential transfers pursuant to 11 U.S.C. § 547. Wider defended his right to the payments, arguing that the payments were protected by the "stockbroker defense" of 11 U.S.C. § 546(e). After a trial, the jury found that Cohen was a stockbroker and the transfers to Wider were settlement payments. The bankruptcy court disregarded the jury's findings and granted a judgment n.o.v. in favor of the trustee, Wootton.

On appeal, the district court affirmed the judgment of the bankruptcy court. The district court concluded that Wider was not entitled to the stockbroker defense as a matter of law, because Cohen did not qualify as a "stockbroker" within the terms of the Bankruptcy Code. The court reasoned that Cohen could not legally be a stockbroker after his license had been revoked. Further, the court determined that Cohen's status did not fall within the Bankruptcy Code definition of "stockbroker," because the definition requires that the stockbroker have a "customer" and Cohen's clients were not legal "customers." Wider filed a timely notice of appeal to this Court.

## II. DISCUSSION

A bankruptcy trustee generally may not avoid a transfer of funds that is in the

nature of a settlement payment made by or to a stockbroker. 11 U.S.C. § 546(e) (Supp. V 1987). Section 546(e) is commonly known as the "stockbroker defense" to the trustee's avoidance power. To qualify for this defense, Wider must show that the payments he received were (1) settlement payments, and (2) made by a stockbroker. This Court is unable to conclude that Wider has satisfied the second of these requirements.

▪ As defined by the Bankruptcy Code, a "stockbroker" is a person:

(A) with respect to which there is a *customer*, as defined in section 741(2) of this title; and

(B) that is engaged in the business of effecting transactions in securities—
(i) for the account of others; or
(ii) with members of the general public, from or for such person's own account . . .

11 U.S.C. § 101(46) (1984) (emphasis added). The critical aspect of this definition is the "customer" requirement; if a securities dealer has no "customers," then the dealer is not a "stockbroker."

The term "customer" is a statutorily defined term of art. In the Bankruptcy Code, "customer" includes the following:

(A) entity with whom a person deals as principal or agent and that has a claim against the such person on account of a security received, acquired, or held by the such person in the ordinary course of such person's business as a stockbroker, from or for the securities account or accounts of such entity—
(i) for safekeeping;
(ii) with a view to sale;
(iii) to cover a consummated sale;
(iv) pursuant to a purchase;
(v) as collateral under a security agreement; or
(vi) for the purpose of effecting registration of transfer; and

(B) entity that has a claim against a person arising out of—
(i) a sale or conversion of a security received, acquired, or held as specified in subparagraph (A) of this paragraph; or
(ii) a deposit of cash, a security, or other property with such person for the purpose of purchasing or selling a security; . . .

11 U.S.C. § 741(2) (1982 & Supp. V 1987). To satisfy the requirements of the "stockbroker defense," Wider must prove that Cohen's clients were "customers" under *either* section 741(2)(A) *or* section 741(2)(B)(ii). *In re ESM Government Securities, Inc.,* 812 F.2d 1374, 1376 (11th Cir.1987).

Subsection (2)(A) allows customer status when securities are received or held for the purchaser by the debtor in the *ordinary course of the debtor's business.* 11 U.S.C. § 741(2)(A). In the present case, the debtor Cohen received securities which he ultimately purchased with funds he acquired from later clients. Moreover, Cohen satisfied outstanding debts with older clients— including the debt owed Wider on the bounced checks—from the funds he acquired from later clients. In common industry parlance, Cohen operated a "Ponzi" scheme. *See In re Bullion Reserve of North America,* 836 F.2d 1214, 1219 n. 8 (9th Cir.) ("A 'Ponzi' scheme is any sort of fraudulent arrangement that uses later acquired funds or products to pay off previous investors."), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). "[T]ransfers made in a 'Ponzi' scheme are not made in the ordinary course of business." *Id.* at 1219. *See also In the Matter of Bishop, Baldwin, Rewald, Dillingham & Wong,* 819 F.2d 214, 216 (9th Cir.1987). Accordingly, Cohen's clients are not "customers" under the terms of subsection (2)(A).[1]

Subsection (2)(B)(ii) allows customer status when the purchaser deposits cash with the debtor so that the debtor might pur-

---

**1.** Wider argues that *Bullion Reserve* and *Bishop, Baldwin* are distinguishable, because these cases interpret the section 547(c)(2) preference provisions and not the section 546(e) stockholder defense. However, this Court fails to see how a Ponzi scheme could be in the ordinary course of business for purposes of the stockholder defense, but not in the ordinary course of business for purposes of the preference provisions.

chase securities. 11 U.S.C. § 741(2)(B)(ii). In the present case, the record clearly indicates that Cohen's clients paid for the securities Cohen purchased only after Cohen had obtained a certificate and sent a confirmation slip. Cohen's clients did not provide Cohen a reservoir of cash from which to purchase securities. Accordingly, Cohen's clients are not "customers" under the terms of subsection (2)(B)(ii).

In sum, this Court cannot conclude that Wider is entitled to the stockbroker defense of 11 U.S.C. § 546(e), because the debtor Cohen did not have "customers" within the comprehension of the Bankruptcy Code.[2] While this result is unavoidably harsh to Wider, it is consistent with the policies Congress established in the Code. To apply the stockbroker defense to shield the payments Cohen made to Wider "would lend judicial support to 'Ponzi' schemes by rewarding early investors at the expense of later victims." *In re Western World Funding, Inc.*, 54 B.R. 470, 481 (Bankr.D. Nev.1985) (citing *In re Independent Clearing House Co.*, 41 B.R. 985, 1004 (Bankr.D. Utah 1984)). This Court will not implicitly authorize fraudulent business practices through an unjustified extension of the stockbroker defense.[3]

## III. CONCLUSION

The debtor, Ronald Cohen, is not a "stockbroker" within the meaning of 11 U.S.C. § 546(e), because he does not have "customers." Therefore, the creditor, Max Wider, is not entitled to a "stockbroker defense" that would exempt certain payments from the bankruptcy trustee's avoidance power. The judgment of the district court is affirmed.

AFFIRMED.

---

**2.** Because this Court concludes Wider has not demonstrated that Cohen has customers such that Cohen could be a "stockholder" within the terms of the Bankruptcy Code, it need not address Wider's contention that the district court erred in concluding that an unlicensed dealer in securities *automatically* could not be a "stockholder."

**3.** Wider argues that he is being treated unfairly, because the Ponzi scheme was only in operation during the four months that preceded Cohen's bankruptcy. However, Wider does not contest that the preferential payments to him were made as a result of this Ponzi scheme.