In re Mary Teresa Ramirez **RODRIGUEZ,** T.R. Network Companies, Inc., T.R. Financial Services, U.S., Inc. and Amicus Computer Systems, Inc., Debtors.

Ben B. **FLOYD,** Trustee, Plaintiff,

v.

James C. **SHINDLER,** Betty Shindler, Defendants.

Bankruptcy Nos. 93–43722–H5–7, 93–43723–H3–7, 93–43724–H2–7 and 93–43725–H4–7.
Adv. No. 94–4335.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Feb. 16, 1995.

Order Entering Judgment Feb. 23, 1995.

---

Rhonda R. Chandler, Houston, TX (Bonham, Carrington & Floyd, P.C., of counsel), for Plaintiff.

J. Craig Cowgill, Houston, TX, for Defendants.

### ORDER GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

KAREN KENNEDY BROWN, Bankruptcy Judge.

Before the Court is the motion for summary judgment of Ben B. Floyd, Trustee of the jointly administered bankruptcy estates of Mary Teresa Ramirez Rodriguez, T.R. Network Companies, Inc., T.R. Financial Services, U.S., Inc., and Amicus Computer Systems, Inc., and plaintiff herein (the "Trustee"). This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (F). This is a core proceeding.[1]

### I. History of these Proceedings

On May 7, 1993, involuntary chapter 7 bankruptcy petitions were filed against Mary Teresa Ramirez Rodriguez, T.R. Network Companies, Inc., T.R. Financial Services, U.S., Inc., and Amicus Computer Systems, Inc. by petitioning creditors Robert R. Ellis, Richard A. Trippeer, and Lynda Shea.

On May 24, 1993, the Court ordered the cases to be jointly administered and ordered the appointment of a trustee. On May 25, 1993, Ben B. Floyd was appointed interim trustee and is the acting Chapter 7 trustee of the debtors' bankruptcy estates. On June 3, 1993, the bankruptcy court entered its Order for Relief under Chapter 7 of the Bankruptcy Code against the debtors.

The instant complaint was filed by the trustee on May 4, 1994, seeking to recover, as preferential transfers pursuant to 11 U.S.C. § 547(b), payments received by Shindler from funds of the debtors during the ninety-day period preceding bankruptcy totalling $112,151.60, plus pre- and post-judgment interest and costs. James C. Shindler and Betty Shindler, jointly and severally, are hereinafter referred to as "Shindler."

### II. Undisputed Facts

In November 1990, Ms. Rodriguez began soliciting funds from investors for the ostensible purpose of using the invested funds to meet purchase order requirements for equipment and service procurement contracts for federal and state agencies. With each investor, Ms. Rodriguez executed a global agree-

---

1. Shindler disputes this Court's jurisdiction over this matter and claims a right to a jury trial. Shindler also denies that this matter is a core proceeding and to the extent that such is provided by 28 U.S.C. § 157, Shindler claims that such statute is unconstitutional. Nevertheless, the Court determines that it has jurisdiction over this proceeding and it is a core proceeding. The Court does not reach the issue of whether Shindler has the right to a jury trial since this matter is disposed of by summary judgment. *See e.g. Clarin Corp. v. Massachusetts Gen. Life Ins. Co.,* 44 F.3d 471 (7th Cir.1994).

ment entitled "Base Participation Contract," one or more agreements entitled "Subcontract" for investment in particular procurement contracts and one or more documents entitled "Guaranty." The Subcontracts state a participation purchase price to be paid by the investor and a participation profit estimate of a stated percent. The participation profit estimate contained in the Subcontracts ranges from seven percent (7%) to forty percent (40%) for a short term investment defined in the Base Participation Contracts to be "usually within thirty-five (35) days." Under the Guaranty, Ms. Rodriguez and the other debtors unconditionally guaranteed payment of the purchase price and profit interest within five (5) business days after completion of the transaction to which the subcontract related. The Base Participation Contracts, Subcontracts, and Guaranties for all investors bear the same format and operative language.

Shindler executed or participated in the following Base Participation Contracts and Subcontracts: (1) Base Participation Contract No. 0619, dated effective December 14, 1992, Subcontract No. 0619–001, dated effective December 14, 1992, Subcontract No. 0619–001, dated effective December 14, 1992, Subcontract No. 0619–002, dated effective January 18, 1993, Subcontract No. 0619–003 dated effective February 22, 1993, and Subcontract No. 0619–004, dated effective March 29, 1993; (2) Base Participation Contract No. 0625 dated effective December 21, 1992, Subcontract No. 0625–001 dated effective December 21, 1992, Subcontract No. 0625–002, dated effective January 25, 1993, Subcontract No. 0625–003, dated effective March 1, 1993, and Subcontract No. 0625–004, dated effective April 5, 1993; and (3) Base Participation Contract No. 0732 dated effective February 2, 1993, Subcontract No. 0732–001, dated effective February 3, 1993, Subcontract No. 0732–002, dated effective March 10, 1993, and Subcontract No. 0732–003, dated effective April 14, 1993. Ms. Rodriguez and the other debtors executed Guarantees for Subcontracts Nos. 0619–001, 0625–001, and 0732–001.

Debtors received payments from Shindler of $100,000 deposited on December 16, 1992,

$50,000 deposited on December 21, 1992, and $100,000 deposited on February 4, 1993. Shindler received payments from debtors and a related entity of $15,000 on January 18, 1993, $15,000 on February 24, 1993, $15,000 on March 31, 1993, and $82,151.60 on April 16, 1993.

There were no deposits from proceeds of any government procurement contracts into the bank accounts of debtors and non-debtor businesses controlled by Ms. Rodriguez, or the personal accounts of Ms. Rodriguez. Debtors had no income-producing assets capable of generating funds necessary to pay the promised returns to the investors. Funds from new investors or those received or retained from existing investors were deposited and commingled with other funds into a number of bank accounts denominated in any of the several names of debtors and non-debtor businesses controlled and directed by Ms. Rodriguez and into various personal accounts of Ms. Rodriguez. Debtors did not treat the accounts as trust accounts or segregate investor funds. The commingled investor funds were used to pay earlier investors and to pay operating expenses, such as payroll, rent, interest payments on bank notes and the like, and the personal expenses of Ms. Rodriguez. Investor funds were also transferred between and among debtors and non-debtor businesses to cover expenses incurred by these entities. Other than the funds received from new or existing investors, no source of funds, including any or all of Ms. Rodriguez's other businesses, was sufficient to repay the investors.

### III. Debtors' Ponzi Scheme

In a Ponzi scheme fictitious profits are paid to investors from the principal sums deposited by subsequent investors. *Merrill v. Abbott (In re Independent Clearing House Co.),* 41 B.R. 985, 994, n. 12 (Bankr.D.Utah 1984), *aff'd in relevant part,* 77 B.R. 843 (D.Utah 1987). *See also, Wyle v. C.H. Rider & Family (In re United Energy Corp.),* 944 F.2d 589, 590 n. 1 (9th Cir.1991); *Danning v. Bozek (In re Bullion Reserve of North America),* 836 F.2d 1214, 1219 n. 8 (9th Cir.), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *Cunningham v. Brown,* 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924).

The undisputed facts of the instant case meet the elements of a Ponzi scheme: (1) deposits made from investors; (2) the Ponzi operator conducts no legitimate business as represented to investors; (3) the purported business of the Ponzi operator produces no profits or earnings, rather the source of funds is the new investments by investors; and (4) payments to investors are made from other investors' invested funds.

Nevertheless, Shindler urges that the complaint itself does not allege a Ponzi scheme and the trustee, therefore, cannot present evidence of a Ponzi scheme. Evidence that Rodriguez operated a Ponzi scheme, however, does not eliminate the trustee's burden of proof on the elements of 11 U.S.C. § 547. A Ponzi scheme while not an element of the trustee's cause of action, is simply a further description of debtors' operations. The trustee need not allege such a description as part of the complaint. *See* 41 B.R. at 993–994.

In the case at bar, the affidavit of the trustee's accountant, Jesse N. Collier, sets forth facts supporting each element of 11 U.S.C. § 547. However, Shindler opposes Collier's affidavit as being not made upon personal knowledge, not setting forth facts as would be admissible in evidence, and as not affirmatively showing that the affiant is competent to testify to the matters stated therein. Shindler claims that the affidavit is based upon an incomplete evaluation of debtors' books and records, states legal conclusions, contains unsubstantiated opinions, is based on hearsay, fails to lay the proper predicate for testimony by an expert witness, and purports to be the affidavit of an "expert" on "Ponzi Schemes."

Shindler claims that since no curriculum vitae or resume of Collier is attached to the affidavit, no predicate has been laid to show that Collier is an expert in any field. The Court notes that Shindler had abundant opportunity to depose Mr. Collier concerning his background and activities on behalf of the trustee and failed to do so. Furthermore, Shindler fails to allege any facts or raise any specific question concerning Collier's educational or professional credentials. The Court takes judicial notice that this Court has approved the employment of Collier in numerous bankruptcy cases to assist various trustees on complex accounting questions. Collier's credentials are sufficient for this Court to allow his testimony as an expert on accounting matters. Fed.Rule Evidence 104(a), 702.

Shindler claims that Collier's affidavit is based on a review of only 75% of debtors' documents and records. To the contrary, the accountants have reviewed all of the records of debtors seized by the FBI and Collier's conclusions are based on that review.

Shindler claims that as a CPA, Collier is not competent to reach legal conclusions concerning preferential and fraudulent transfers. The Court finds that as a competent CPA, the affiant may give expert opinion testimony on the insolvency of debtors, the potential distribution to creditors upon liquidation of the estate, and the axiomatic conclusion that if there is less than a 100% distribution to creditors, those unsecured creditors who received payment prior to bankruptcy necessarily received more on that portion of their debt than they would have in a bankruptcy distribution. Collier is qualified to testify as to whether a business has the characteristics of a Ponzi scheme.

Shindler objects globally to the portions of the affidavit which restate provisions of debtors' Base Participation Contracts. The Court finds that this opposition is unfounded since these contracts are otherwise in evidence.

Shindler opposes the affidavit because it fails to specify which records form the basis of Collier's opinion. To the contrary, the Court finds that the statement that the review included debtors' and non-debtor affiliates' business, financial, and bank records from 1989 to 1993, including, but not limited to their balance sheets, financial statements, investor files and monthly investor statements, bank account statements, cancelled checks, wire transfer advices, and debit and credit memos, is sufficiently specific. Furthermore, these documents are the type of data reasonably relied upon by experts in accounting in forming opinions.

■ Lastly, Shindler complains that the affidavit reflects a review of debtors' records by Collier Smith & Co., P.C., rather than Collier individually. A witness must testify based on personal knowledge but an expert witness may give opinion testimony based on facts or data perceived by or made known to the expert at or before the hearing. Fed.R.Evidence Rules 602 and 702. If the facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. Fed.R.Evidence Rule 703. The Court finds that the facts on which Collier relies for his opinions are those reasonably relied on by experts assessing the legitimacy of business operations such as those before the Court, and such facts are reasonably trustworthy to make such reliance reasonable. *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir.1987); *Soden v. Freightliner Corp.*, 714 F.2d 498 (5th Cir.1983); Fed. R.Ev. 104(a).

■ To the extent that Shindler claims that the trustee's accountant is not an expert in Ponzi schemes, the Court concludes that the existence vel non of a Ponzi scheme is a matter for this Court to determine based on the factual evidence presented. The Court notes that Shindler does not controvert the accountant's factual statements concerning the operations of debtors' businesses, bank accounts, solicitation of investor funds or payments to investors. The Court concludes that the affidavit of Jesse N. Collier is competent summary judgment evidence. Debtors had no profit or income producing assets sufficient to support the debts incurred under the Base Participation Contracts and Subcontracts. The funds paid to investors were funds paid by other investors. The Court concludes that Ms. Rodriguez and the other debtors operated a Ponzi scheme.

### IV. 11 U.S.C. § 547(b)

Bankruptcy Code section 547(b) provides that the trustee may avoid transfers of an interest of debtors in property that:

(i) were made to or for the benefit of a creditor;

(ii) for or on account of an antecedent debt;

(iii) while the debtors were insolvent;

(iv) to a noninsider on or within 90 days before the filing of the petition; and

(v) that enables such creditor to receive more than such creditor would receive through a Chapter 7 liquidation.

11 U.S.C. § 547(b).

The trustee seeks to avoid the transfers to Shindler totaling $112,151.60, (which excludes the transfer of January 18, 1993, of $15,000 as outside the 90–day period). Shindler urges that the payments he received were alternatively: (1) distributions of profits from joint ventures between Shindler and debtors, and as such the payments did not come from assets of debtors' estate and were not payments on antecedent debts; (2) made in the ordinary course of business; and/or (3) offset by subsequent new value advanced by Shindler to debtors. Shindler further urges that the trustee is not entitled to pre-or post-judgment interest and costs.

### V. Transfers of an Interest of Debtors' in Property

■ The sums paid to Shindler were derived from the funds maintained in the commingled bank accounts of debtors except for the payment of $82,151.60 in April 1993. That payment came from the account of T & T Investments at Park National Bank which account was also controlled by Ms. Rodriguez. Shindler submits no summary judgment evidence to controvert the trustee's evidence that the accounts of debtors and non-debtors including T & T contain commingled investor funds and were under the ultimate custody and control of Ms. Rodriguez. Where the funds transferred are under the custody and control of debtor "mere circuity of arrangement will not save a transfer which effects a preference." *Dean v. Davis*, 242 U.S. 438, 443, 37 S.Ct. 130, 131, 61 L.Ed. 419 (1917).

Moreover, funds obtained from investors in a Ponzi scheme are property of debtor, and are susceptible to preferential and fraudulent disposition by debtor. *See Merrill v. Allen (In re Universal Clearing House Co.)*, 60

B.R. 985, 995 (D.Utah 1986); *Sender v. Buchanan (In re Hedged–Investments Assocs. Inc.)*, 163 B.R. 841, 850 (Bankr.D.Colo.1994); *Dicello v. Jenkins (In re Int'l Loan Network, Inc.)*, 160 B.R. 1, 11 (Bankr.D.D.C.1993).

## VI. Joint Venture

 Shindler urges that his arrangements with Ms. Rodriguez were joint ventures and any payments he received were profit distributions from the joint venture, not payments from debtors on antecedent debts. Texas law provides that a joint venture include four elements: a community of interest in the venture; an agreement to share profits; an agreement to share losses; and, a mutual right of control or management of the enterprise. *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex. 1981).

Shindler urges that the Base Participation Contracts by their terms meet all of the elements of a joint venture except for the sharing of profits, which, Shindler claims, is implied. Shindler urges that a mutual right of control existed because Shindler invested funds with the right to withdraw them upon 30 days notice or at the time of renewal of the subcontract. Shindler urges that further control is evident because Shindler could re-invest the principal and interest.

To the contrary, the Base Participation Contracts expressly provide "that Participant [Shindler] acts entirely as an independent investing party, participating in no capacity with respect to the contracts other than purchasing a share of the profits to be derived from such contracts. . . ." *See* Base Participation Contract No. 0619, Exhibit "A" to Accountant's Affidavit. Further, "Participant specifically acknowledges . . . that expectation of profits from such contract is not based on any entrepreneurial or managerial influence of Participant." *Id.* Further, "Nothing in this agreement shall constitute Contractor [Rodriguez] and the Participant as partners nor entitle Participant to participate in the results than the contracts(s) in which Participant has purchased a share." *Id.* Furthermore, Shindler testified in deposition that the rate of return on the investment was established by Rodriguez prior to Shindler's investment of money. Lastly, contrary to an agreement to share losses, the debtors guaranteed repayment of Shindler's investments and profits in subcontracts 0619–001, 0625–001, and 0732–001. The Court finds that there was no joint venture between debtors and Shindler.

## VII. Shindler's Status as a Creditor

A creditor is an entity that has a claim against the debtor that arose at the time of or before the order for relief. 11 U.S.C. § 101(10). A claim is a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5).

Shindler's claim against debtors arose from his initial investment and the execution of the first Base Participation Contract, Subcontract, and Guaranty. The Base Participation Contracts provide that Shindler could withdraw funds at any time upon thirty days written notice. The Base Participation Contracts also obligated Ms. Rodriguez to pay Shindler the purchase price and profit share from each Subcontract, within five (5) business days from the time the Subcontract was completed. Likewise, the Guaranties executed by debtors unconditionally guaranteed payment of each purchase price and profit interest within five (5) business days after completion of the Subcontract. It is clear that Shindler became a creditor of debtors when funds were transferred under the Base Participation Contracts between the dates of December 15, 1992 and February 4, 1993.

## VIII. Antecedent Debt

A prior debt that is reduced or discharged as a result of payment within 90 days of bankruptcy is an antecedent debt within the meaning of Section 547(b)(2). *Merrill v. Abbott (In re Independent Clearing House Co.)*, 41 B.R. at 1010. Since Shindler fails to prove a joint venture defense, the Court finds all of the funds transferred to Shindler were paid while a creditor of debtors on account of the payments required by the Base Participation Contracts, Subcontracts, and Guarantees previously executed.

## IX. Insolvency

A debtor is presumed to be insolvent during the ninety-day period preceding bankruptcy. 11 U.S.C. § 547(f). A trustee is not required to present evidence on insolvency unless a defendant first presents some evidence to rebut the presumption. *In re Emerald Oil Co.*, 695 F.2d 833, 838–39 (5th Cir.1983). Shindler presents no summary judgment evidence on the issue of insolvency. Moreover, the promised rates of return render a Ponzi scheme operator insolvent from the time of the scheme's inception, because the returns exceed any legitimate investments. *In re Taubman*, 160 B.R. 964, 978 (Bankr.S.D.Ohio 1993). Thus, as the scheme progresses and more investors are promised returns, the operator becomes more insolvent. *Id.*, citing *Cunningham v. Brown*, 265 U.S. 1, 7, 44 S.Ct. 424, 425, 68 L.Ed. 873 (1924). This Court concludes that debtors were insolvent when the payments were made.

## X. Distribution Upon Liquidation

Based on the testimony of the accountant and the trustee, the anticipated distribution to creditors of debtors' estates is less than 100 percent.[2] Thus, the preferential payments enabled Shindler to receive more than would have been received if the payment had not been made, and debtors' estates were liquidated according to the provisions of the Bankruptcy Code.

## XI. Ordinary Course of Business

Bankruptcy Code section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms ...

Shindler urges that because debtors paid or reinvested the initial subcontracts according to their terms, the payments Shindler received meet the elements of the ordinary course defense. Shindler's summary judgment evidence, however, supports rather than controverts the trustee's evidence that the business for which debtors solicited and obtained investor funds was not the business for which such funds were actually used. Debtors purportedly operated a business for the purpose of procurement of equipment and service contracts for federal, state, a related agencies. This was the ostensible use of investor funds, including those of Shindler. Instead, debtors used investor funds to repay other investors and to pay personal expenses. The business in which Shindler invested was not the activity in which debtors were engaged. The monies transferred to Shindler were neither made in the ordinary course of business of Shindler and debtors, nor made according to ordinary business terms. Moreover, the ordinary course of business defense does not apply to transfers in furtherance of a Ponzi scheme. *Wider v. Wootton*, 907 F.2d 570 (5th Cir. 1990).

## XII. New Value

The trustee may not avoid a transfer to a creditor to the extent that after the transfer the creditor gives new value to the debtor. 11 U.S.C. § 547(c)(4). New value means money or money's worth in goods, services, or credit. 11 U.S.C. § 547(a)(2). Shindler claims that debtors received new value by Shindler's execution of Subcontract No. 0732–003 on April 14, 1994, after Shindler received a transfer of funds. However, Shindler fails to state that any money was paid to debtors in connection with the subcontract. The mere execution of the subcon-

2. Shindler opposes the affidavit of the trustee alleging that it is based on unsubstantiated opinion because the trustee relies in part on the affidavit of Jesse N. Collier. The Court finds the affidavit of Jesse N. Collier to be competent summary judgment evidence. The Court also finds that the affidavit of the trustee is competent summary judgment evidence.

tract without a related payment of money is not money or money's worth. The subcontract is not an extension of credit to debtors and cannot be drawn on for cash. Shindler fails to prove the elements of 11 U.S.C. § 547(c)(4).

### XIII. Prejudgment Interest

It is well settled that bankruptcy courts have discretion to award prejudgment interest to a trustee who successfully avoids a preferential or fraudulent transfer, from the time demand is made or an adversary proceeding is instituted, unless the amount of the contested payment was undetermined prior to the bankruptcy court's judgment. *See e.g., Sigmon v. Royal Cake Co. (In re Cybermech, Inc.),* 13 F.3d 818, 822 (4th Cir. 1994); *Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers),* 4 F.3d 1556, 1566 (10th Cir.1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994); *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.),* 850 F.2d 1275, 1281 (8th Cir.1988). Prejudgment interest may generally be awarded in cases where such an award serves to compensate the injured party and is otherwise equitable. *In re Investment Bankers, Inc.,* 4 F.3d at 1566.

In this case, Shindler admits receiving the preferential payments in the amount of $112,151.60. The amount of the preferential payments is, therefore, known to both the trustee and Shindler without the need for judicial determination. An award of prejudgment interest to the trustee will compensate debtors' estates for Shindler's use of those funds that were wrongfully withheld from the estates during the pendency of this case, and will further the prime bankruptcy policy of equality of distribution among creditors.

Accordingly, this Court awards prejudgment interest to the trustee at the statutory rate set forth in 28 U.S.C. § 1961(a), accruing from the commencement date of this case. *See Milchem, Inc. v. Fredman (In re Nucorp Energy, Inc.),* 902 F.2d 729, 734 (9th Cir.1990) (28 U.S.C. § 1961 should be used for calculation of prejudgment interest in preferential or fraudulent transfer suit

unless equities demand a different rate); *see also Bash v. Schwartz (In re B. Schwartz Furniture Co.),* 131 B.R. 623, 626 (Bankr. N.D.Ohio 1991). Likewise, the trustee is entitled to post-judgment interest on the entire judgment amount as provided by 28 U.S.C. § 1961(a). *In re Int'l Loan Network, Inc.,* 160 B.R. at 20.

Based on the foregoing, it is

**ORDERED** that summary judgment is **GRANTED** in favor of the trustee against James C. and Betty Shindler for the sum of $112,151.60 plus pre- and post-judgment interest at the rate of ____% and costs of court.

### FINAL JUDGMENT

In accordance with the Order Granting Trustee's Motion for Summary Judgment, the Court enters this Final Judgment. It is

ORDERED, ADJUDGED and DECREED that Ben B. Floyd, Trustee have judgment against and recover of and from James C. Shindler and Betty Shindler, jointly and severally:

1. The sum of $112,151.60;

2. Pre-judgment interest on the sum of $112,151.60 at the statutory rate set forth in 28 U.S.C. § 1961(a) from May 4, 1994 to the date of entry of this Final Judgment;

3. Post-judgment interest on the entire judgment at the statutory rate set forth in 28 U.S.C. § 1961(a) from the date of entry of this Final Judgment until paid; and

4. Costs of court

for all of which let execution issue if not paid.

This judgment disposes of all parties and issues in this case and is a Final Judgment.