In re Mary Teresa RAMIREZ RODRIGUEZ, T.R. Network Companies, Inc., T.R. Financial Services, U.S., Inc., and Amicus Computer Services, Inc., Debtors.

Ben B. FLOYD, Trustee, Plaintiff,

v.

Michael M. DUNSON, D/B/A MMD and Bay Industrial Sales, Defendant.

Bankruptcy Nos. 93–43722–H5–7, 93–43723–H3–7, 93–43724–H2–7, and 93–43725–H4–7.
Adversary No. 95–4307.

United States Bankruptcy Court,
S.D.Texas,
Houston Division.

June 5, 1997.

---

Randall A. Rios, Houston, for Plaintiff.

Richard L. Fuqua, II, Houston, for Defendant.

## MEMORANDUM OPINION

KAREN K. BROWN, Bankruptcy Judge.

Ben B. Floyd, Trustee of the jointly administered bankruptcy estates of Mary Teresa Ramirez Rodriguez, T.R. Network Companies, Inc., T.R. Financial Services, U.S., Inc., and Amicus Computer Systems, Inc., and plaintiff herein, submits these first amended findings of fact and conclusions of law.

### Findings of Fact

To the extent any finding of fact is more properly considered a conclusion of law, it is adopted as such.

#### Background of Bankruptcy

On May 7, 1993, involuntary chapter 7 petitions were filed against Mary Teresa Ramirez Rodriguez, T.R. Network Companies, Inc., T.R. Financial Services, U.S., Inc., and Amicus Computer Systems, Inc. (debtors), by petitioning creditors Robert E. Ellis, Richard A. Trippeer, and Lynda Shea.

On May 24, 1993, the bankruptcy court entered an order granting motion for joint administration of the cases of debtors and their expedited motion to appoint interim trustee before order for relief.

On May 25, 1993, Ben B. Floyd was appointed interim trustee of debtors' estates.

On June 3, 1993, the bankruptcy court entered its order for relief under chapter 7 of the Bankruptcy Code against debtors.

On August 18, 1993, the trustee became permanent chapter 7 trustee of debtors' estates pursuant to 11 U.S.C. § 702(d) and Fed.R.Bankr.P. 2003.

#### The Case at Bar

On May 5, 1995, the trustee filed his original complaint against the defendant under adversary number 95–4307, and styled *Ben B. Floyd, Trustee v. Michael M. Dunson d/b/a MMD and Bay Industrial Sales.*

This case was filed to recover various preferential payments and fraudulent transfers made to the defendant which the trustee contended were avoidable as follows:

a. *11 U.S.C. §§ 547 and 550:* 90 day preferential transfers to defendant under the contracts in the net amount of $880,800.00;

b. *11 U.S.C. §§ 548 and 550:* One year fraudulent transfers to defendant under the contracts in the net amount of $599,907.70;

c. *11 U.S.C. §§ 548 and 550:* One year fraudulent transfers on commissions and/or miscellaneous payments in the net amount of $508,967.50;

d. *Tex.Bus.Com. § 24.005 and 11 U.S.C. §§ 544 and 550:* Four year fraudulent transfers to defendant under the contracts in the net amount of $882,-630.86; and

e. *Tex.Bus.Com.Code § 24.005 and 11 U.S.C. §§ 544 and 550:* Four year fraudulent transfers on commissions and/or miscellaneous payments in the net amount of $620,607.73.

On November 1, 1995, the trustee filed his motion for summary judgment, memorandum of law in support of motion for summary judgment and the affidavit of Jesse N. Collier, the accountant for the trustee in support thereof (the "Accountant's Affidavit"). The trustee contended that Collier's testimony set forth in the accountant's affidavit established that the business of the debtors was conduct-

ed as a Ponzi scheme from on or about November 1990, until its demise on or about April 23, 1990. Based on debtors' Ponzi scheme operation, the trustee contended that he was entitled to summary judgment against the defendant as a matter of law.

On November 21, 1995, the defendant filed his response and memorandum in opposition to trustee's motion for summary judgment. The defendant admitted that he received each of the avoidable transfers alleged by the trustee. The defendant, however, contended that the bankruptcy court was without jurisdiction to determine the summary judgment motion due to his request for jury trial and his failure to file a proof of claim. Additionally, the defendant argued that the trustee's motion for summary judgment should be denied because:

a. The accountant's affidavit was not appropriate summary judgment evidence;

b. The issue of Ponzi scheme was not raised by the trustee in the pleadings;

c. The defendant's affidavit raised disputed issues concerning the nature of debtors' business and whether it was in fact a Ponzi scheme;

d. There were factual issues regarding the defendant's ordinary course of business defense under 11 U.S.C. § 547(c)(2);

e. There were factual issues concerning debtors' intent to hinder, delay or defraud under 11 U.S.C. § 548(a) and Tex.Bus. & Com.Code Ann. § 24.005;

f. There were factual issues concerning whether the defendant was a good faith transferee under 11 U.S.C. § 548(c) and Tex.Bus. & Com.Code Ann. § 24.009; and

g. There were factual issues concerning the defendant's good faith in receiving commission payments and the value provided to the debtors.

### Undisputed Facts Concerning Debtor's Operations

In approximately November 1990, debtor, Mary Teresa Ramirez Rodriguez ("Ms.Rodriguez"), began soliciting funds from investors for the ostensible purpose of using the invested funds to meet purchase order requirements received by Ms. Rodriguez for equipment and/or service procurement contracts from federal, state, and related agencies.

With each investor, Ms. Rodriguez executed a global agreement entitled "Base Participation Contract," one or more agreements entitled "Subcontract" for investment in particular procurement contracts and one or more documents entitled "Guaranty."

The subcontracts state a participation purchase price to be paid by the investor and the participation profit estimate of a stated percent. The participation profit estimate ranged from seven percent (7%) to forty percent (40%) for a short term investment defined in the Base Participation Contracts to be "usually within thirty-five days."

Under the guaranty, Ms. Rodriguez and the other debtors unconditionally guaranteed payment of the subcontract purchase price and profit interest within five (5) business days after completion of the transaction to which the subcontract allegedly related.

The defendant entered into twelve (12) such base participation contracts, numbers 0054, 0126, 0177, 0312, 0371, 0393, 0573, 0591, 0682, 0703, 0823 and 0900.

The business of debtors was conducted as a Ponzi scheme from about November 1990 until its demise on or about April 23, 1993.

Other than approximately $50,000.00 paid to debtor, Amicus Computer Systems, Inc. ("Amicus"), from various U.S. Embassies for computer equipment, there were no deposits from proceeds of any government procurement contracts into the bank accounts of debtors and non-debtor businesses controlled by Ms. Rodriguez, or the personal accounts of Ms. Rodriguez.

Debtors had no legitimate income producing assets that were capable of generating funds necessary to pay the promised returns to investors.

As a result of the Ponzi scheme operations, Ms. Rodriguez and the other debtors were insolvent from on or about November 1990, and became more insolvent with each successive base participation contract and subcontract.

Funds from new investors or those received or retained from existing investors were deposited and commingled with other funds into a number of bank accounts denominated in any of the several names of debtors and non-debtor businesses controlled and directed by Ms. Rodriguez, and various personal accounts of Ms. Rodriguez.

Debtors did not treat the accounts as trust accounts or segregate investor funds.

The commingled investor funds were used to pay earlier investors, to pay operating expenses and the personal expenses of Ms. Rodriguez.

Investor funds were also transferred between and among the debtors and non-debtor businesses to cover expenses incurred by these entities.

The defendant delivered the total sum of $1,113,475.00 to debtors under base participation contract numbers 0054, 0126, 0177, 0312, 0371, 0393, 0573, 0591, 0682, 0703, 0823, and 0900. These monies were deposited and commingled without distinction, into the accounts of debtors.

In addition to the investment contracts, the defendant had a verbal agreement with Ms. Rodriguez concerning the payment of commissions for investments made by other investors.

The agreement provided that the defendant would receive a commission averaging five percent for all investments made by others that were introduced to Ms. Rodriguez by the defendant, or that were provided with Ms. Rodriguez's name by the defendant.

The defendant never actively solicited any individuals to invest with debtors. Instead, the defendant merely told interested parties of his understanding of debtors' business, and provided Ms. Rodriguez's name to certain individuals that expressed an interest in investing with debtors.

On November 16, 1994, the grand jury in and for the United States District Court for the Southern District of Texas, Houston Division, filed an indictment against Ms. Rodriguez, charging her with thirty-five (35) counts of wire fraud, mail fraud and money laundering arising from debtors' operation of the Ponzi scheme.

On March 22, 1995, the jury in criminal number H–94–216 found Ms. Rodriguez guilty of all thirty-five (35) counts of the indictment.

On June 28, 1995, the district court entered a judgment in a criminal case against Ms. Rodriguez.

### Preferential Transfers

During the ninety (90) day period preceding bankruptcy, after allowance for new value, the defendant received $880,800.00 from funds of one or more of debtors in connection with the base participation contracts (the "Preferential Transfers").

The preferential transfers were transfers of an interest of the debtors in property.

The preferential transfers were made to the defendant as a creditor of debtors.

The preferential transfers were made to the defendant for or on account of an antecedent debt.

The preferential transfers were made to the defendant while debtors were insolvent.

The anticipated distribution to creditors of debtors' estates is less than one hundred percent. Thus, the preferential transfers enabled the defendant to receive more than would have been received through a chapter 7 liquidation.

### Fraudulent Transfers

The defendant invested the total sum of $1,113,475.00 with the debtors, and received $1,713,382.70 from funds of one or more of debtors, during the period beginning May 7, 1992 and ending May 6, 1993. The amount received by the defendant in excess of the amount invested during the one year period preceding bankruptcy was $599,907.70 (the "One Year Fraudulent Transfers").

The defendant invested the total sum of $1,113,475.00 with debtors, and received $1,996,105.86 from funds of one or more of debtors, during the period beginning May 7, 1989 and ending May 6, 1993. The amount received by the defendant in excess of the amount invested during the four year period

preceding bankruptcy was $882,630.86 (the "Four Year Fraudulent Transfers").

During the period beginning May 7, 1992 and ending May 6, 1993, the defendant received commissions from one or more of debtors totaling $508,967.00 for investments made by others pursuant to the verbal agreement with Ms. Rodriguez (the "One Fraudulent Transfers/Commissions").

During the period beginning May 7, 1939 and ending May 6, 1993, the defendant received commissions from one or more of debtors totaling $620,607.73 for investments made by others pursuant to the verbal agreement with Ms. Rodriguez (the "Four Fraudulent Transfers/Commissions").

The One Year Fraudulent Transfers, the Four Year Fraudulent Transfers, the One Year Fraudulent Transfers/Commissions and the Four Year Fraudulent Transfers/Commissions (collectively, the "Fraudulent Transfers") were transfers of an interest of debtors in property.

The fraudulent transfers were made by debtors with actual intent to hinder, delay or defraud creditors.

Debtors received less than a reasonably equivalent value in exchange for the fraudulent transfers to the defendant.

The fraudulent transfers were made to the defendant while debtors were insolvent.

### Prejudgment Interest

The defendant admits receiving the preferential transfers and the fraudulent transfers.

The amount of the preferential transfers and the fraudulent transfers is therefore known to both the trustee and the defendant without the need for judicial determination.

An award of prejudgment interest to the trustee will compensate debtors' estates for the defendants' use of those funds that were wrongfully withheld from the estates during the pendency of this case, and will further the primary bankruptcy policy of equality of distribution among creditors.

## CONCLUSIONS OF LAW

To the extent any conclusion of law is more properly considered a finding of fact, it is adopted as such.

### Jurisdiction

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (F) and (H). This is a core proceeding.

### Debtors' Ponzi Scheme

■ A Ponzi scheme is a fraudulent investment arrangement whereby an entity makes payments to investors from monies obtained from later investors rather than from any "profits" of the underlying business venture. *See, e.g., Wyle v. C.H. Rider & Family (In re United Energy Corp.),* 944 F.2d 589, 590 n. 1 (9th Cir., 1991); *Danning v. Bozek (In re Bullion Reserve of North America),* 836 F.2d 1214, 1218 n. 8 (9th Cir.), cert. denied, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988).

The scheme consists of funneling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture, thereby cultivating an illusion that a legitimate profit-making business opportunity exists and inducing further investment. *Id.,* citing, *Cunningham v. Brown,* 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924). Typically, investors are promised high rates of return, and initial investors obtain a greater amount of money from the Ponzi scheme than those who join the Ponzi scheme later. *Merrill v. Abbott (In re Independent Clearing House Co.),* 41 B.R. 985, 994 n. 12 (Bankr.D.Utah 1984), aff'd in relevant part, 62 B.R. 118 (D.Utah 1986); *see also, In re Independent Clearing House Co.,* 77 B.R. 843 (D.Utah 1987).

■ "As a result of the absence of sufficient, or any, assets able to generate funds necessary to pay the promised returns, the success of such a scheme guarantees its demise because the operator must attract more and more funds, which thereby creates a greater need for funds to pay previous investors, all of which ultimately causes the scheme to collapse." *In re Taubman,* 160 B.R. 964, 978 (Bankr.S.D.Ohio 1993). The promised rate of return render a Ponzi

scheme operator insolvent from the scheme's inception, because the returns exceed any legitimate investments. *Id.,* citing *Cunningham v. Brown,* 265 U.S. 1, 7, 44 S.Ct. 424, 425, 68 L.Ed. 873 (1924).

■ The facts of the instant case meet the elements of a Ponzi scheme: (1) deposits made from investors; (2) the Ponzi operator conducts no legitimate business as represented to investors; (3) the purported business of the Ponzi operator produces no profits or earnings, rather the source of funds is the new investments by investors; and (4) payments to investors are made from other investor's invested funds.

### Accountant's Affidavit

Fed.R.Evid. 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Fed.R.Evid. 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

■ Collier's credentials enable him to testify as an expert on accounting matters under Fed.R.Evid. 702. As a competent certified public accountant, Collier may give expert opinion testimony on the insolvency of the debtors, the potential distribution to creditors upon liquidation of the estates, and the conclusion that if there is less than a one hundred percent distribution to creditors, those unsecured creditors that received payment prior to bankruptcy necessarily received more than they would have received in a bankruptcy distribution.

■ As a certified public accountant, Collier is also qualified to testify as to whether a business has the characteristics of a Ponzi scheme. The facts or data upon which Collier relied for his opinion that the business of the debtors was operated as a Ponzi scheme are those reasonably relied upon by experts assessing the legitimacy of business operations, and such facts are reasonably trustworthy to make such reliance reasonable. The accountant's affidavit is admissible under Fed.R.Evid. 703.

The defendant presented no evidence to controvert Collier's factual statements concerning the operations of debtors' business, bank accounts, solicitation of investor funds or payments to investors.

### Defendant's Affidavit

The defendant's affidavit fails to raise a fact issue regarding the existence of a Ponzi scheme. The defendant asserts that a factual issue exists regarding debtors' operation of a Ponzi scheme based on his belief that debtors were engaged in a legal business enterprise.

■ The issue is not whether the defendant believed he was being defrauded, rather the issue is whether debtors, by their conduct, were engaged in a fraudulent enterprise. The defendant's beliefs regarding the legitimacy of debtors' operations are irrelevant and insufficient to create any fact issue regarding the underlying scheme perpetrated by debtors.

### Trustee's Pleadings

The operation of the debtors' business as Ponzi scheme is not an element of the trustee's causes of action under 11 U.S.C. § 547(b), 11 U.S.C. § 548 or Tex. Bus. & Com.Code § 24.005.

■ A Ponzi scheme, while not an element of the trustee's cause of action, is simply a further description of debtors' operation. The trustee was not required to allege such a description as part of the complaint.

### Preferential Transfers

Section 547(b) of the Bankruptcy Code enables the trustee to avoid all transfers of an interest of debtors in property that:

a. were made to or for the benefit of a creditor;

b. for or on account of an antecedent debt;

c. while the debtors were insolvent;

d. were to a non-insider on or within 90 days before the date of the filing of the petition; and

e. enabled such creditor to receive more than would have been received through a chapter 7 liquidation.

11 U.S.C. § 547(b).

■ Funds obtained from investors in a Ponzi scheme are property of debtor, and are thus susceptible to preferential and fraudulent disposition by debtor. *See, e.g., Merrill v. Allen (In re Universal Clearing House Co.),* 60 B.R. 985, 995 (D.Utah 1986); *Floyd v. Shindler (In re Rodriguez),* 204 B.R. 510, 515 (Bankr.S.D.Tex.1995); *In re Hedged–Investments Assoc., Inc.,* 163 B.R. 841, 850–51 (Bankr.D.Colo.1994), *aff'd,* 84 F.3d 1286 (10th Cir.1996); *Dicello v. Jenkins (In re Int'l Loan Network, Inc.),* 160 B.R. 1, 11 (Bankr. D.Dist.Col.1993).

A creditor is an entity that has a claim against debtor that arose at the time of or before the order for relief. 11 U.S.C. § 101(10). A claim is a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5).

■ Any "prior debt that is reduced or discharged as a result of payment within 90 days of bankruptcy is an antecedent debt within the meaning of section 547(b)(2)." *In re Independent Clearing House Co.,* 41 B.R. at 1011. *See also, Floyd v. Shindler (In re Rodriguez),* 204 B.R. at 516.

■ A debtor is presumed to be insolvent during the ninety day period preceding bankruptcy. *See* 11 U.S.C. § 547(f).

■ An enterprise engaged in a Ponzi scheme is insolvent from its inception and becomes increasingly insolvent as the scheme progresses. *See, e.g., In re Independent Clearing House Co.,* 77 B.R. at 871; *In re Taubman,* 160 B.R. at 978, citing, *Cunningham v. Brown,* 265 U.S. at 7, 44 S.Ct. at 425.

■ The ordinary course of business defense set forth in 11 U.S.C. § 547(c)(2) does not apply to transfers in furtherance of a Ponzi scheme. *Henderson v. Buchanan,* 985 F.2d 1021 (9th Cir.1993); *Wider v. Wootton,* 907 F.2d 570 (5th Cir.1990); *In re Bullion Reserve of North America,* 836 F.2d 1214 (9th Cir.), *cert. denied sub nom., Bozek v. Danning,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). *See also, Sender v. Heggland Family Trust (In re Hedged–Investments Assoc., Inc.),* 48 F.3d 470 (10th Cir.1995) (ordinary course defense in Ponzi scheme case only available to ordinary trade creditors/non-investor transferees).

■ The defendant contends that he is entitled to an additional "credit" for certain "new value" he claims to have given the debtors by way of "reinvesting" certain "commissions" with the debtors rather than receiving actual dollars from the debtors in payment of such "commissions." In short, the defendant argues that he is entitled to receive new value credit for dollars which he was never paid and dollars which never really existed except in the debtors' records.

New value means money or money's worth in goods, services or credit. 11 U.S.C. § 547(a)(2). The defendant fails to assert that any money was paid to the debtors in connection with these contracts. The mere execution of a contract without a related payment of money is not an extension of credit to the debtors and cannot be drawn on for cash. The defendant has therefore failed to establish the elements of 11 U.S.C. § 547(c)(4).

***Fraudulent Transfers***

Pursuant to 11 U.S.C. § 548(a), the trustee may avoid a transfer of an interest of debtors in property, made within one year of the bankruptcy filing, where: (I) the transfer was made with actual intent to hinder, delay or defraud creditors; or (ii) the debtors were insolvent when such transfer occurred. 11 U.S.C. § 548(a)(1) and (2).

Similarly, pursuant to Tex. Bus. & Com. Code §§ 24.005 and 24.010, made applicable

by operation of 11 U.S.C. § 544(b),[1] the trustee may avoid such fraudulent transfers within four years if the same elements are proven.

 Those persons who invest on the eve of a Ponzi scheme's collapse are entities to whom the debtors became indebted when the investors entrusted their money to debtors. *In re Independent Clearing House Co.,* 77 B.R. at 859. Therefore, if at the time debtors made transfers to earlier investors they had the actual intent to hinder, delay or defraud later investors, transfers to earlier investors may be fraudulent within the meaning of Section 548(a)(1) and Tex. Bus. & Com.Code Ann § 24.005. *See Id.*

 Fraudulent intent may be established, and usually must be, by circumstantial evidence or by inferences drawn from a course of conduct because direct proof will rarely be available. *See, e.g., Hayes v. Palm Seedlings Partners–A (In re Agricultural Research and Technology Group, Inc.),* 916 F.2d 528, 534 (9th Cir.1990), citing *In re Roco Corp.,* 701 F.2d 978, 984 (1st Cir.1983). For example, one court found that knowledge that a transaction will operate to the detriment of creditors is sufficient for actual intent. *Hayes v. Palm Seedlings Partners–A (In re Agricultural Research and Technology Group, Inc.),* 916 F.2d at 535, citing *In re American Prop., Inc.,* 14 B.R. 637, 643 (Bankr.D.Kan.1981).

Other courts have concluded debtor's actual intent to hinder, delay or defraud its creditors may be inferred from the mere existence of a Ponzi scheme.

One can infer an intent to defraud future investors from the mere fact that a debtor was running a Ponzi scheme. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law, ... and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them.

*In re Independent Clearing House Co.,* 77 B.R. at 860. *See also, Hayes v. Palm Seedlings Partners–A (In re Agricultural Research and Technology Group, Inc.),* 916 F.2d at 535, citing *Conroy v. Shott,* 363 F.2d 90, 92 (6th Cir.1966); *Jobin v. McKay (In re M & L Business Machine Co.),* 155 B.R. 531, 540 (Bankr.D. Colo.1993), *aff'd* 164 B.R. 657 (D.Colo.1994), *aff'd* 84 F.3d 1330 (10th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 608, 136 L.Ed.2d 534 (1996).

 Moreover, the criminal conviction of Ms. Rodriguez based on the debtors' operation of a Ponzi scheme conclusively establishes fraudulent intent, and precludes the defendant from relitigating this issue. *Martino v. Edison Worldwide Capital (In re Randy),* 189 B.R. 425, 440 (Bankr.N.D.Ill. 1995), citing, *In re Raiford,* 695 F.2d 521, 523 (11th Cir.1983) and *Nathan v. Tenna Corp.,* 560 F.2d 761, 763–64 (7th Cir.1977) (collateral estoppel applies to bar relitigation of Ponzi scheme debtor's fraudulent intent where debtor has been found guilty of fraud in a prior criminal trial). As a matter of law, the fraudulent transfers were made to the defendant with the actual intent to hinder, delay or defraud later investors in debtors' scheme.

Section 548(c) of the Bankruptcy Code generally provides that a transferee "that takes for value and in good faith ... may

---

1. 11 U.S.C. § 544(b) provides that a bankruptcy trustee has the power to avoid fraudulent transfers pursuant to the provisions of the Bankruptcy Code and state law. Section 544(b) of the Bankruptcy Code allows the Trustee to avoid any transfer of the debtors' property which would be avoidable under state law by a creditor holding an unsecured claim. 11 U.S.C. § 544(b). Texas has adopted the Uniform Fraudulent Transfer Act ("UFTA") which is generally located in Section 24.001 of the Texas Business and Commerce Code. The UFTA closely parallels the actual and constructive fraudulent transfer provisions of Sections 548(a)(1) and 548(a)(2) of the Bankruptcy Code, but provides for avoidance of fraudulent transfers within four years rather than the one year period allowed by the Bankruptcy Code.

retain any interest transferred ... to the extent that such transferee gave value to the debtor in exchange for such transfer ..." 11 U.S.C. § 548(c). Section 548(d)(2)(A) of the Bankruptcy Code defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor...." 11 U.S.C. § 548(d)(2)(A).

◼ As a matter of law, the debtors did not receive "value" in exchange for the transfers to the defendant under the base participation contracts, subcontracts, and guaranties that exceeded the principal amount of the defendant's investments with the debtors. *In re Independent Clearing House Co.*, 77 B.R. at 859; *In re Int'l Loan Network, Inc.*, 160 B.R. at 16. Similarly, as a matter of law, the defendant gave no value to debtors for the transfers under the base participation contracts, subcontracts, and guaranties that exceeded the principal amount of the defendant's investments with debtors. *Id.*

◼ As a matter of law, the defendant gave no value to the debtors for the commissions attributable to investments made by others pursuant to the verbal agreement with Ms. Rodriguez. *See, e.g., In re Randy,* 189 B.R. at 440 (commission payments to parties who assisted in furtherance of Ponzi scheme are payments made to further illegal contract and, thus, Section 548(c) is not available as shelter for such commission payments); *In re Int'l Loan Network, Inc.,* 160 B.R. at 16 (enforcing "contract" for payment of commissions in Ponzi scheme case would only "exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate."); *A. Wilson v. RHS & Associates (In re Blazo Corp.),* 1994 WL 456881 (Bankr.N.D.Ohio 1994) (defendants could legally give no value in exchange for activities in furtherance of illegal Ponzi scheme and therefore were not allowed to rely on Section 548(c) to shelter such payments).

◼ Furthermore, the defendant's verbal agreement with Ms. Rodriguez concerning the payment of commissions for investments made by other investors is unenforceable under contract law and as a matter of public policy. *See, In re Randy,* 189 B.R. at 441 ("[E]nforcing any agreements [for commis-

sions in Ponzi scheme] would only exacerbate harm to the debtor's creditors. Any contracts of the defendants would be unenforceable, and no value was or could legally be given pursuant thereto to the debtor or the debtor's bankruptcy estate.")

### *Prejudgment Interest*

◼ Bankruptcy courts have discretion to award prejudgment interest to a trustee who successfully avoids a preferential or fraudulent transfer, from the time demand is made or an adversary proceeding is instituted, unless the amount of the contested payment was undetermined prior to the bankruptcy court's judgment. *See, e.g., Sigmon v. Royal Cake Co. (In re Cybermech, Inc.),* 13 F.3d 818, 822 (4th Cir.1994); *Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.),* 4 F.3d 1556 (10th Cir.1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994); *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.),* 850 F.2d 1275, 1281 (8th Cir.1988).

◼ Prejudgment interest may generally be awarded in cases where such an award serves to compensate the injured party and is otherwise equitable. *In re Investment Bankers, Inc.,* 4 F.3d at 1566.

◼ Trustee is entitled to recover from Dunson prejudgment interest at the statutory rate set forth in 28 U.S.C. § 1961(a), accruing from the commencement date of this case. *See, Milchem, Inc. v. Fredman (In re Nucorp Energy, Inc.),* 902 F.2d 729, 734 (9th Cir.1990); *See also, Bash v. Schwartz (In re B. Schwartz Furniture Co.),* 131 B.R. 623, 626 (Bankr.N.D.Ohio 1991).

◼ The trustee is entitled to post-judgment interest on the entire judgment amount as provided by 28 U.S.C. § 1961(a). *In re Int'l Loan Network, Inc.,* 160 B.R. at 20.