543 P.2d 1293 (1975)
Ruby Kisner ALTERGOTT, Plaintiff-Appellant,
v.
Harold YEAGER et al., Defendants-Appellees.
No. 74-049.
Colorado Court of Appeals, Div. I.
October 9, 1975.
Rehearing Denied November 6, 1975.
Certiorari Denied January 12, 1976.
*1294 Robert W. Caddes, Denver, for plaintiff-appellant.
Hammond & Chilson, John H. Chilson, Loveland, for defendant-appellee Harold Yeager.
Harden & Napheys, P. C., Charles S. Bloom, Fort Collins, for defendants-appellees Albert Yeager and Victor Yeager.
Selected for Official Publication.
BERMAN, Judge.
This is an appeal from a judgment granting defendants' motion for summary judgment and dismissing the complaint. We reverse.
Ruby Kisner Altergott filed her amended complaint against the defendants, Harold Yeager and his brothers Albert and Victor, claiming damages as a result of fraudulent representations made to her by the defendants. Albert and Victor were sued as co-executors of the estate of Herman Yeager, deceased; additionally, Albert and Harold were sued individually.
According to the amended complaint, the course of events leading to this action began *1295 when Harold was adjudged to be the father of a child born to plaintiff on September 27, 1943. Although the paternity action was instituted December 31, 1943, a reversal of the jury's verdict, see Yeager v. People, 116 Colo. 379, 181 P.2d 442, mandated a retrial leading to another jury verdict and judgment for plaintiff being entered on January 6, 1948. That judgment awarded the plaintiff damages of $47.50 per month and directed back payments due from the date of the birth of the child to be paid in a lump sum at once. The monthly payment of $47.50 was to be paid for a period not to exceed 18 years from the birth of the child.
On the day after the birth of the child, Harold, by quitclaim deeds, conveyed all his right, title and interest in two parcels of land, which he then owned in the County of Boulder, to his brother Albert and his now deceased brother Herman. These deeds were properly recorded. On December 10, 1946, Albert and Herman, in response to garnishee summons and interrogatories served upon them, filed their answers under oath asserting "that they did not have in their possession or under their control any property of Harold Yeager or in which he is interested." They further claimed in their answers "that they did not know of any property, real or personal, in which Harold Yeager had an interest, and the title to such property was not recorded in his name." Plaintiff, in her complaint, states that "such statements were false, were known to be false when made, and were made with an intent that [plaintiff] rely upon them to her damage."
After the second jury verdict was returned, plaintiff in August 1948 filed a complaint against Harold, Albert, and Herman, claiming that the real property previously conveyed by Harold to Herman and Albert was conveyed for the purpose of avoiding legal liability to support Harold's son. To this complaint, Harold filed a verified answer stating that "he had no property subject to levy under execution, and that he had no right, title or interest in or to the real estate described in the complaint and disclaimed any interest therein." This the plaintiff claims was false, was known by Harold to be false, and was made for the purpose that she rely upon it. The amended complaint in the instant case also claims that on November 10, 1948, Herman and Albert filed their verified answer to garnishee summons, claiming that "they did not have in their possession or under their control any property of Harold . . . or any property in which [he] was interested," and that these statements were knowingly false and made for the purpose of defrauding plaintiff.
As of December 8, 1948, Harold had paid nothing for the support and maintenance of the child born to plaintiff. On that date, Harold offered to settle and satisfy the judgment for the sum of $5,000 which was to be a "complete settlement of all obligations for support, maintenance and education of the child and the plaintiff personally." Plaintiff, relying "upon the previously made false statements of [Albert, Herman, and Harold], entered into a stipulation and agreement of settlement," which was approved by the court on December 8, 1948, and then received the amount specified in the agreement. As part of the settlement the court dismissed the money judgment rendered in the paternity suit and also dismissed with prejudice the suit instituted by plaintiff in August 1948.
Herman died on August 4, 1965, and Harold filed a claim against Herman's estate asserting that Harold was the equitable owner, pursuant to an oral trust agreement with Herman, of 28.98% of all property, with certain exceptions not relevant here, held in Herman's name. Following a hearing, the court with jurisdiction over the estate determined on April 21, 1971, that in 1946 an oral agreement was made between Herman, Albert, and Harold whereby upon completion of a program of work to *1296 which they all agreed, Harold's respective interest in the overall joint farming operations would be 20%; that legal title to the interest of Harold Yeager was at all times held in the name of Herman Yeager; and that Harold's 20% interest in the entire farming operation of the brothers constituted 28.98% of interest in the property held in the name of Herman Yeager with certain exceptions not relevant here.
During the course of the hearings on the claim, plaintiff was subpoenaed in March 1972 to testify as a witness, and it was at that time she allegedly first learned of the oral agreement between the defendants and Harold regarding Harold's ownership interest in real property. It was as a result of that knowledge that she filed her complaint in this action on June 2, 1972.
Defendants in their answer admitted most of the allegations of the complaint, but denied that either the sworn answers to the interrogatories or the verified answer filed by Harold to the action instituted against Harold, Albert, and Herman in August 1948 were false. Additionally, they set up a number of affirmative defenses, and thereafter, the defendants moved for summary judgment based upon the ground that the present action constituted a collateral attack on the judgment of dismissal in the paternity action and the dismissal of the 1948 case.
In granting the motion for summary judgment, the trial court assumed all of the facts alleged in plaintiff's complaint to be true, and found as a fact that the fraud of which plaintiff is now complaining was intrinsic to the action instituted by her in August 1948 and was clearly presented to the court in that action. The trial court then concluded as a matter of law that plaintiff's present complaint constituted a collateral attack on the dismissal of the previous complaint. This appeal followed.
The dispositive issue on review is whether the trial court erred in granting the motion for summary judgment on the ground that the plaintiff could not maintain the present suit because it was a collateral attack on a previously rendered judgment.
A collateral attack on a judgment is defined as:
"`[A]n attempt to avoid, defeat or evade [the judgment], or deny its force and effect, in some incidental proceeding not provided by law . . . .'" Brennan v. Grover, 158 Colo. 66, 404 P.2d 544.
The plaintiff, in this action, seeks damages, in tort, for fraudulent representations allegedly made to her by the defendants. She does not seek equitable relief from the prior judgment, nor does she seek to rescind the settlement or in any way "avoid, defeat or evade it." On the contrary, by this action plaintiff affirms the settlement and sues in fraud for damages.
It is true that in the prior action in 1948 she sought to set aside the quitclaim deeds of 1943 executed by Harold to his brothers as a fraud upon Harold's creditors. But, the fraud there alleged was the conveyance by Harold for the purpose of avoiding legal liability to support his son. Here, however, the fraud alleged is the secret oral agreement made in 1946 and the false representations made by defendants in 1946, and thereafter, which induced her to settle her claim for child support. Plaintiff, in her complaint in this action, does not allege the conveyances were fraudulent nor does she seek to have the conveyances set aside; rather she accepts that judgment of dismissal as valid and seeks to recover damages on the grounds that she was fraudulently induced to enter the settlement that led to that dismissal.
In an analogous situation, Hood v. Hood, 335 F.2d 585 (10th Cir.), cert. denied, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 185, the plaintiff sued her former husband for deceit to recover damages on the ground that the former husband had induced her to enter into a property settlement by fraudulently representing the extent *1297 and value of his assets. A divorce was obtained subsequent to the property settlement and the decree included the property settlement as part of the judgment. The former husband set up the divorce decree as a bar to the former wife's action for fraud. The court in Hood stated:
"[T]he instant action is neither an action to set aside the property settlement nor the decree of the court. On the contrary, it affirms the contract, and is a tort action for deceit seeking damages from Hood on account of the fraud practiced on Mrs. Hood by him. An action to recover damages for fraud inducing a contract is founded on tort and not on the contract and proceeds on the theory of affirmance of the contract fraudulently procured.
. . . . . .
[E]ven if the property settlement stipulation was merged in the judgment and the above language of the decree [`that each of the parties be barred, foreclosed and excluded from any claim or demand against the other or the others property'] be regarded as an adjudication of that issue, Mrs. Hood, through the fraud practiced upon her by Hood, was induced to enter into the property settlement. . . and to refrain from seeking a full inquiry and determination by the court . . . ."
See also United States National Bank v. Bartges, 122 Colo. 546, 224 P.2d 658.
Here, too, the plaintiff is proceeding on the theory of affirmance of the settlement contract fraudulently procured. Her allegation is that she, through the fraud practiced upon her by defendants, was induced to settle her claim for child support and thereby prevented by fraud from seeking a full inquiry and determination by the court. The alleged fraud is extrinsic to the prior actions, Hood, supra, not intrinsic as the trial court found.
Although the acts constituting, what subsequently was discovered to be, fraudulent conduct occurred as a result of the conduct of the defendants in response to plaintiff's claim of a fraudulent conveyance, the issue of the present fraudulent misrepresentation was not involved in the original action nor was it litigated therein. The defendants deliberately kept their oral agreement secret for over 20 years and the key to its existence was revealed only upon the death of Herman.
The judgment originally entered against Harold, it should also be noted, was dismissed pursuant to a settlement reached between the parties. The court approved the settlement but made no inquiry into or determination of the issues involved. Thus, it cannot be said the court reached any conclusion as to whether there was a fraudulent oral agreement between the defendants or whether fraudulent representations were made by the defendants to plaintiff, nor could the court have reached any conclusion as to these matters since they were not in issue.
As an alternative affirmative defense, Harold Yeager sought dismissal of the action based on satisfaction of the judgment entered in the paternity proceedings. However, since we hold that the instant case does not constitute a collateral attack on the prior judgment but proceeds in tort on the theory of affirmance of the settlement fraudulently procured, the satisfaction of that judgment is immaterial.
By an unbroken line of cases our courts have held that one defrauded has either the right to affirm the contract and sue for damages, or rescind the contract and sue for return of the money paid, the former being an action in tort and the latter an action on contract. See, e. g., Neiheisel v. Malone, 150 Colo. 586, 375 P.2d 197. And, when the suit is brought on the affirmance of the contract, it is clear that *1298 the consideration previously received on signing the agreement need not be returned. Wheeler v. Dunn, 13 Colo. 428, 22 P. 827; 12 S. Williston, Contracts § 1524 (3rd ed.). Nor can the wrongdoer insist that the only remedy is to petition the court in which the judgment was entered to set it aside, for the choice of remedies belongs to the one who has been defrauded, and may not be forced upon him by the wrongdoer. Barnes v. Eastern & Western Lumber Co., 205 Or. 553, 287 P.2d 929; Brockway v. Heilman, 250 Cal.App.2d 807, 58 Cal.Rptr. 772.
The defendants also point out that when the settlement agreement was entered into, Harold specifically gave up his right to appeal the judgment rendered against him in the paternity action, and they assert that it would now be unfair to permit plaintiff to sue on that agreement without restoring to him his right of appeal. The argument does not impress us. Granted that he has lost his right of appeal, this dilemma is the result of his own wrongdoing; he has in fact been "hoist with his own petard." "[N]o man shall set up his own fraud as the basis of a right or claim for his own benefit . . .," Coon v. Rigden, 4 Colo. 275; see also McClellan v. Morris, 71 Colo. 304, 206 P. 575; and "courts are not eager to find an avenue of escape for the wrongdoer . . . ." Zang v. Adams, 23 Colo. 408, 48 P. 509.
The defendants' other affirmative defenses were not set forth in the motion for summary judgment, the trial court did not rule on them, and they are not before this court. In view of our disposition of this case, it is unnecessary to consider plaintiff's remaining allegations of error.
The judgment is reversed and the cause is remanded with directions to reinstate the complaint and for further proceedings consistent with the views expressed herein.
COYTE and KELLY, JJ., concur.