**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 5/23/96**

**TENTH CIRCUIT**

_____

In re:  HEDGED-INVESTMENTS ASSOCIATES, INC.,  )
            )
    Debtor.          )
            )
--------------------------     )
            )
HARVEY SENDER, Trustee,       )
            )
    Plaintiff-Appellee,     )
            )
v.            )   No. 95-1059
            )
ESTILL H. BUCHANAN, a/k/a Mary Estill Buchanan,  )
individually, and as Trustee of the Estill H. Buchanan Trust  )
and as Custodian for Catharine Buchanan and Helen  )
Buchanan under the Uniform Gifts to Minors Act,  )
            )
    Defendant-Appellant.    )

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 94-F-859)**

_____

Melody Dawson of Katch, Sender & Wasserman, P.C., Denver, Colorado, for Plaintiff-Appellee.

Bruce E. Rohde of Davis & Ceriani, P.C., Denver, Colorado, for Defendant-Appellant.

_____

Before **BRORBY** and **McWILLIAMS**, Circuit Judges, and **KERN**,[*] District Judge.

---

[*] The Honorable Terry C. Kern, United States District Judge for the Northern District of Oklahoma, sitting by designation.

**BRORBY**, Circuit Judge.

_____

Harvey Sender, as trustee in bankruptcy, brought claims in the bankruptcy court against Estill Buchanan under, *inter alia*,[2] 11 U.S.C. § 547(b) & (b)(4)(B) (insider preferences) and 11 U.S.C. § 548(a)(2) (constructive fraudulent transfers). The bankruptcy court found in favor of Mr. Sender on both claims. The district court affirmed the bankruptcy court, and Ms. Buchanan now appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 158(d) and affirm the district court's decision affirming the bankruptcy court.

This case arises out of a fraudulent investment scheme perpetrated by James Donahue and his solely-owned corporation, Hedged Investments Associates, Inc. ("HIA Inc."). The parties do not dispute the basic operation of the scheme. In the late 1970s, Mr. Donahue and HIA Inc. began an investment fund known as Hedged Investments. Mr. Donahue attracted investors to the fund by claiming he had developed a sophisticated method of trading in stock options that resulted in substantial returns. Upon enticing someone to invest in the Hedged Investments fund, Mr. Donahue sold the investor limited partnership units in one of three limited partnerships he established as investment vehicles for the fund. Mr. Donahue named these partnerships Hedged-Investments Associates, L.P., ("HIA L.P."), Hedged-Investments Associates II, L.P., ("HIA II L.P."), and Hedged-Securities Associates, L.P. ("HSA L.P.") (collectively the "Debtor Partnerships"). HIA Inc. served

_____

[2] Pursuant to his powers under 11 U.S.C. § 541, Mr. Sender also brought claims against Ms. Buchanan under the Colorado Uniform Limited Partnership Act, Colo. Rev. Stat. § 7-62-101 *et seq.* The appeal *sub judice* does not implicate these claims.

as managing general partner for each of the Debtor Partnerships. Acting through HIA Inc., Mr. Donahue told investors he would invest partnership capital in the Hedged Investments fund and that the fund's assets would in turn be invested according to his trading strategy. Though Mr. Donahue actually used investors' contributions to trade in stock options, the Hedged Investments fund amassed enormous trading losses. To hide these losses, Mr. Donahue reported false earnings and allocated false profits to investors' accounts. He then allowed investors to withdraw cash from their accounts on the basis of these falsely attributed profits. In effect, Mr. Donahue ran a Ponzi scheme -- he paid these so-called profits to investors who chose to make cash withdrawals with the contributions of other investors.

In 1978, Ms. Buchanan, acting for herself and as trustee for her own trust and custodian for her children, began investing in the Hedged Investments fund. Over the course of her participation in the Hedged Investments scheme, Ms. Buchanan invested about $750,000 in the fund and received transfers from HIA Inc. totaling a little over $2 million. Apparently, Ms. Buchanan was among the few investors who received more money from the Hedged Investments fund than they invested. According to Mr. Sender, "hundreds of people together lost hundreds of millions of dollars in [the Hedged Investments] scheme."

Mr. Donahue's Hedged Investments scheme collapsed in August 1990. On August 30, 1990, HIA Inc. filed for bankruptcy protection under Chapter 11 of Title 11 of the United States Code. In September 1990, the bankruptcy court converted the proceeding to Chapter 7 and appointed Mr. Sender as trustee.

During the one-year period extending backward from the original bankruptcy filing, Ms. Buchanan received transfers from HIA Inc. totaling $248,896.88. Mr. Sender, as bankruptcy trustee for the estate of HIA Inc., sued Ms. Buchanan to recover these transfers pursuant to two alternative avoidance theories. First, he claimed under 11 U.S.C. § 547(b) that Ms. Buchanan received the $248,896.88 as preferences to or for the benefit of an inside creditor. Second, Mr. Sender claimed the transfers were avoidable under 11 U.S.C. § 548(a) as transfers made while HIA Inc. was insolvent and for which it did not receive reasonably equivalent value. The bankruptcy court found for Mr. Sender on both theories and entered alternative judgments against Ms. Buchanan under § 547(b) and § 548(a) in the amount of $248,896.88, plus costs. The district court affirmed the bankruptcy court's decision. In this appeal, Ms. Buchanan contends the transfers from HIA Inc. to her are avoidable under neither § 547(b) nor § 548(a). Because we find the bankruptcy court properly concluded Mr. Sender can avoid the transfers pursuant to 11 U.S.C. § 548(a), we do not address the issues raised by Mr. Sender's claim under § 547(b).

In reviewing the decision of a bankruptcy court pursuant to 28 U.S.C. § 158, the district court and the court of appeals apply the same standards of review that govern appellate review in other cases. Therefore, we review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *Phillips v. White (In re White)*, 25 F.3d 931, 933 (10th Cir. 1994).

According to 11 U.S.C. § 548:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or

4

involuntarily--

 ....

  (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

  (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; ....

The bankruptcy court found the payments made to Ms. Buchanan within one year of the bankruptcy filing for HIA Inc. satisfied these requirements. Accordingly, the bankruptcy court ruled Mr. Sender could avoid the payments. Ms. Buchanan challenges this ruling on the basis of a single issue. She claims HIA Inc. received "reasonably equivalent value in exchange" for the money it transferred to her, which, if true, would mean the transfers are not avoidable. The bankruptcy court disagreed, declaring:

> Here, the evidence established that during the relevant one year preceding the Debtor's bankruptcy, the Defendant received $248,896.88, and she invested not one red cent during that time period. Up to the beginning of the one-year period, she had invested a total of $750,911.00 in cash and had already received $1,761,143 in cash -- over $1 million more than she invested. It is ludicrous for her to now argue that she gave the reasonably equivalent value for the sums received during the one-year period.

Ms. Buchanan does not dispute the bankruptcy court's observation that "she invested not one red cent" during the time she received the transfers at issue. Instead, she contends HIA Inc. received reasonably equivalent value for its transfers to her because the transfers partially satisfied her legitimate fraud claim against HIA Inc. According to Ms. Buchanan:

> everyone agrees that HIA, Inc. fraudulently induced Mrs. Buchanan to invest and then misappropriated her investment.... Obviously, then, Mrs. Buchanan had a 'claim'

5

against HIA, Inc. and HIA, Inc. had a 'debt' to her (a liability on that claim).... Mrs. Buchanan's claims were satisfied, in part, by the payments she received. Therefore, HIA, Inc. received value for its transfers to her.

The bankruptcy court did not address this theory. The district court addressed it only cursorily, asserting:

[Ms. Buchanan's] reasoning is specious. Although the Hedged scheme was a fraud, because the amounts Buchanan received were well in excess of her investment, rather than a victim of the Ponzi scheme, she was a beneficiary who suffered no damages. Given these excess payments, the Court finds that there was no reasonably equivalent value.

Though the district court reached the correct conclusion, the issue is not as elementary as the court's treatment suggests. For Ms. Buchanan to succeed on her argument, HIA Inc. must have (1) received value and (2) that value must have been reasonably equivalent to the $248,896.88 in transfers to Ms. Buchanan. *See Gray v. Snyder*, 704 F.2d 709, 711-12 (4th Cir. 1983).

According to 11 U.S.C. § 548, "'value' means property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). Ms. Buchanan contends the transfers at issue satisfied an "antecedent debt" created by her fraud claim against HIA Inc. The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). According to the legislative history from both Houses of Congress, the terms "are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." H.R. Rep. No. 595, 95th Cong., 1st Sess. 310, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6267 *and* App. 2 Collier on Bankruptcy; S. Rep. No. 989, 95th Cong., 2d Sess. 23, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5809 *and* App. 3 Collier on Bankruptcy; *see also Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558 (1990)

6

(recognizing Congress' intent to make the terms "debt" and "claim" coextensive). Thus, a debtor receives "value" for a transfer if the transfer satisfies a "claim" the transferee-creditor has against the debtor.

The bankruptcy code defines "claim" as: "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). Congress intended that this be the "broadest possible definition." H.R. Rep. No. 595, at 309; S. Rep. No. 989, at 21; *see also Ohio v. Kovacs*, 469 U.S. 274, 279 (1985) (recognizing "that Congress desired a broad definition of a 'claim'"). Ms. Buchanan contends she had a claim against HIA Inc. on a theory of fraud because she was fraudulently induced to participate and continue participating in the Hedged Investments scheme.

There is no dispute that Ms. Buchanan was fraudulently induced to participate in a Ponzi scheme. The question is whether she had a viable claim against HIA Inc. based on this fraud. Ms. Buchanan received the transfers at issue after already receiving approximately $1 million more than her original $750,000 investment. The district court found that since Ms. Buchanan received more than she invested she did not have a viable claim for fraud. In effect, the district court determined Ms. Buchanan had already received restitution and therefore was entitled to no remedy. The district court's observations are correct insofar as restitution is the remedy to which Ms. Buchanan would be entitled; however, restitution is not the only remedy available to a defrauded party under Colorado law.

7

Under Colorado law, a fraud plaintiff

> must elect either to rescind the entire contract to restore the conditions existing before the agreement was made *or* to affirm the entire contract and recover the difference between the actual value of the benefits received and the value of those benefits if they had been as represented, plus any other damages naturally and proximately caused.

*Colorado Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786, 793 (Colo. Ct. App. 1991) (citing *Trimble v. City & County of Denver*, 697 P.2d 716, 724 (Colo. 1985)) (emphasis added), *aff'd*, 854 P.2d 1232 (Colo. 1993); *see also* 37 Am.Jur.2d Fraud & Deceit § 327. The election of remedies belongs to the defrauded party. *Trimble*, 697 P.2d at 723 (citing *Altergott v. Yeager*, 543 P.2d 1293 (Colo. Ct. App. 1975)).

Ms. Buchanan contends the district court overlooked the second alternative remedy for fraud. She claims she could have affirmed the investment contract and recovered the difference between the value of what she received and the value of Mr. Donahue's representations to her, plus consequential damages. In support of this argument, Ms. Buchanan points to evidence in the record indicating that even though she received about $1.25 million more than she invested, she still did not receive the full value of Mr. Donahue's representations. She also highlights certain consequential damages she suffered, including unrecoverable tax payments on undistributed earnings and interest payments on money she borrowed to pay the taxes.

We are not persuaded. Ms. Buchanan correctly observes Colorado law ordinarily permits a fraud plaintiff to affirm the contract and receive expectation and consequential damages. This case, however, is not ordinary; it arises out of a Ponzi scheme in which Ms. Buchanan was only one of

8

many innocent investors. As the district court in *Merrill v. Abbott (In re Independent Clearing House Inc.)*, 77 B.R. 843 (D. Utah 1987) (en banc), observed:

> To allow an [investor] to enforce his contract to recover promised returns in excess if his [investment] would be to further the debtors' fraudulent scheme at the expense of other [investors].
>
> ... Any recovery would not come from the debtors' own assets because they had no assets they could legitimately call their own. Rather, any award of damages would have to be paid out of money rightfully belonging to other victims of the Ponzi scheme.

*Id.* at 858.

We find the district court's reasoning in *Merrill* persuasive and reach the same conclusion. "[A]s a matter of public policy, the contract[] involved in this case w[as] unenforceable to the extent [it] purported to give [Ms. Buchanan] a right to payments in excess of [her] undertaking." *Id*. In other words, Ms. Buchanan did not have the enforceable option of affirming her contract with HIA Inc. and recovering expectation and consequential damages. Because she had no claim against HIA Inc. for damages in excess of her original investment, HIA Inc. had no debt to her for those amounts. Therefore, the transfers could not have satisfied an antecedent debt of HIA Inc., which means HIA Inc. received no value in exchange for the transfers. Since HIA Inc. received no value for the transfers, a fortiori, it did not receive reasonably equivalent value, which brings the transfers within the requirements of 11 U.S.C. § 548(a)(2). *Merrill*, 77 B.R. at 858-59; *see also In re Taubman*, 160 B.R. 964, 985-86 (Bankr. S.D. Ohio 1993) (adopting the rule announced in *Merrill*); *Jobin v. Lalan (In re M & L Business Mach. Co.)*, 160 B.R. 851, 858 (Bankr. D. Colo. 1993) (same), *aff'd*, 167 B.R. 219 (D. Colo. 1994).

Ms. Buchanan has not challenged the bankruptcy court's application of § 548(a) on any other grounds. For the reasons given herein, we **AFFIRM** the district court's decision affirming the decision of the bankruptcy court.