FILED

U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

August 11, 2015

Blaine F. Bates
Clerk

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE HYUNGKEUN SUN, former member J & J Sun LLC, officer, director, shareholder Y & K Sun, Inc., also known as Harry Hyung K Sun, doing business as Roll Your Own Cigarette Store, and YEONAM KIM SUN, member Tel Cel Mobile LLC, former member Joy Luck Palace LLC, former member J & J Sun LLC, officer, director, shareholder Y & K Sun, Inc., also known as Eunice Sun,<br><br>Debtors. | BAP No.    CO-14-050 |
| WONJOONG KIM and YOONEE KIM,<br><br>Plaintiffs – Appellees,<br><br>v.<br><br>HYUNGKEUN SUN and YEONAM KIM SUN,<br><br>Defendants – Appellants. | Bankr. No.   12-25005<br>Adv. No.    12-01660<br>Chapter   7<br><br>OPINION |

Appeal from the United States Bankruptcy Court
for the District of Colorado

Submitted on the briefs:[*]

Kevin S. Neiman of Kevin S. Neiman, PC, Denver, Colorado, and J. Gregory McAuliffe of Darling Milligan Horowitz P.C., Denver, Colorado, for Defendants - Appellants.

---

[*]    In their statements regarding oral argument, as amended, the parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr. P. 8019(b)(3).  The case is therefore ordered submitted without oral argument.

Chad S. Caby of Lewis Roca Rothgerber LLP, Denver, Colorado, and James N. Thomaidis and D. Elizabeth Wills of Gersh & Thomaidis, Denver, Colorado, for Plaintiffs - Appellees.

Before KARLIN, SOMERS, and HALL, Bankruptcy Judges.

HALL, Bankruptcy Judge.

Hyungkeun and Yeonam-Kim Sun appeal the bankruptcy court's order that, *inter alia,* held: 1) the debt they owed to Wonjoong and Yoonee Kim was a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6);[1] 2) the Kims were entitled to benefit-of-the-bargain damages of $1,042,206; and 3) the Kims were entitled to prejudgment interest of 8% per annum from May 17, 2007 until September 12, 2014.  After carefully reviewing the record, we AFFIRM in part and REVERSE in part.  We affirm the court's nondischargeability findings because they are not clearly erroneous.  We reverse the bankruptcy court's benefit-of-the-bargain damages award based on the Kims' election of rescission as their remedy, and remand for damages calculation in accordance with this opinion.  We affirm the bankruptcy court's award of prejudgment interest at the rate of 8% per annum, compounded annually, because it was not an abuse of discretion to use the interest rate in the state statute.  We, however, reverse the bankruptcy court's decision to calculate prejudgment interest on the entire damage award from May 17, 2007, because it fails to adjust for when payments were made and the accrual of interest.  We remand for recalculation of prejudgment interest in accordance with this opinion.

## I.    Factual Background

Mr. Kim is a professor at the University of Seoul, Korea, where he resides most of the year, visiting his family in the United States two to three times per

---

[1]    All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

year for a month at a time. His wife and their daughters reside in Colorado. Beginning in approximately 2001, the Kims became friends with the Suns, who attended their church. By 2006, the Kims and the Suns had become very close, a relationship both parties described as "like family."

Mr. Sun had an excellent reputation in the church and in the area's Korean community as a successful real estate investor. When Mr. Kim found it difficult to transfer funds from Korea to fund family expenses, he asked Mr. Sun for advice in finding a commercial property for purchase which would generate a monthly income stream. The Kims told Mr. Sun they wished to limit their investment to $500,000, retaining $400,000 of their approximately $900,000 in savings to purchase a house in Colorado.

In March 2007, Mr. Sun proposed the Kims purchase an interest in property located on West Colfax in Denver (the "JCRS Property") for $900,000. The JCRS Property was owned by the Suns' wholly-owned corporation, Y& K Sun, Inc. ("YKSI"). Mr. Sun convinced the Kims to invest their entire $900,000 by making the following representations:

* The JCRS Property needed $1 million for renovations and improvements.

* The JCRS Property was encumbered by a current loan of $3 million.

* Mr. Sun had arranged a refinancing of $4 million for the JCRS Property, and that such financing was a "done deal." He showed the Kims a copy of a mortgage application for the JCRS Property in support of that assertion.

* The JCRS Property would be worth approximately $6 million when the renovations were completed and the expected lessees had moved in.

* After the refinancing paid off the existing $3 million loan, the Suns and the Kims would split the remaining $1 million in refinancing proceeds fifty-fifty. This would provide an almost immediate return of $500,000 of the Kims' investment to enable them to purchase a house, while the improved JCRS Property would provide the Kims $3,000 per month in income beginning three months after the investment.

> \*      There were already new leases signed for a clothing store and a restaurant on the JCRS Property.
>
> \*      Mr. Sun would guarantee the value of the investment.

None of the above representations were true. Instead of using the investment to purchase a real estate interest in the JCRS Property as originally proposed, Mr. Sun documented the $900,000 investment as a purchase of 50% of the shares of YKSI. This change was based on the advice of Mr. Sun's counsel, who had expressed concerns that a sale of a partial interest in the JCRS Property could trigger the existing mortgage's due-on-sale clause. As part of this investment change, a stock purchase agreement was drafted. Mr. Sun represented the value of the stock was equal to or greater than $900,000. The Kims signed this agreement on April 17, 2007.

Mr. Kim's Korean bank, however, refused to release the funds for the purchase absent evidence of a real property sale and a deed of trust in accordance with the original proposal. After the bank balked, Mr. Kim told Mr. Sun he was no longer interested in the deal. But Mr. Sun convinced the Kims to complete the transaction by supplying a contract for purchase and sale of real property to the Kims' bank. Upon receipt of the contract, the bank released the $900,000. Immediately upon the Kims' receipt of the $900,000, Mr. Sun again transformed the deal into a stock purchase transaction. A new stock purchase agreement was drafted and signed by the wives on May 17, 2007.

At Mrs. Sun's direction, Mrs. Kim made the $900,000 check payable to "Y + K Sun." Mrs. Kim believed she was giving a check to YKSI for the purchase of 50% of the company. The check, however, was deposited into a new personal account opened by Mrs. Sun. Mr. Sun admitted only about $57,137 of the $900,000 investment actually went to the JCRS project.

YKSI's 2007 and 2009 amended tax returns indicate the Kims contributed $900,000 to YKSI and reflect the $900,000 investment as a loan to the Suns as

shareholders of YKSI. No such loan was ever authorized by YKSI's board of directors.

In April 2008, YKSI sold a commercial property on East Mississippi Avenue in Aurora, Colorado (the "Mississippi Property") to an entity known as S&B Nova, which was controlled by a Mr. and Mrs. Lee. The sale was financed by Hanmi Bank, which held a first priority lien against the Mississippi Property in the approximate amount of $1,726,000. YKSI received from S&B Nova a promissory note (the "Nova Note"), secured by a junior lien, in the approximate amount of $1,035,000, and $347,000 in cash. The Kims were not informed of the Mississippi Property sale nor did they receive a distribution from that sale.

Three months later, Mr. Sun told the Kims he was going to put YKSI into bankruptcy, and the Kims would lose their investment unless they exchanged their 50% interest in YKSI for the Nova Note. Mr. Sun explained the note paid monthly income of $6,200, of which the Kims would receive half and the Suns would get the other half because they and YKSI were in financial distress. Mr. Sun did not inform the Kims that the Nova Note was in a subordinate position to Hanmi Bank's note or that it was worth $163,000 less than the face amount of the note due to payments previously made by S&B Nova.

On July 14, 2008, the Kims surrendered their shares of YKSI and resigned as directors. YKSI then assigned the Nova Note to the Kims. According to Mr. Kim, they received approximately $3,100 monthly on the Nova Note.

In January 2009, Mr. Sun told the Kims, if they wished to protect their investment, they needed to exchange their interest in the Nova Note for shares of stock in S&B Nova. Mr. Sun indicated the transaction would make Mrs. Kim (who would hold the shares) a 24% shareholder in S&B Nova. On January 13, 2009, the original Nova Note was canceled, S&B Nova issued two new promissory notes ($260,000 and $372,000) payable to Mr. Kim, and Mrs. Kim received 19% of S&B Nova shares. Mr. Sun had convinced the Kims to give 5%

of the S&B Nova stock to Mrs. Sun due to their tax problems.

Over the four-year life of these transactions, the Kims received payments in the aggregate amount of $109,794. They have received no payments since 2011. Subsequently, S&B Nova was liquidated, and the Lees filed for bankruptcy protection.

The Suns filed a Chapter 7 petition on July 18, 2012, and the Kims filed an adversary complaint on October 15, 2012, seeking a determination that the debt owed to them is nondischargeable under §§ 523(a)(2)(A), (a)(4), (a)(6), and (a)(19).[2] At the Kims' request, the bankruptcy court granted their motion to hold their § 523(a)(19) claim in abeyance pending resolution of the remaining claims.[3] On September 12, 2014, after a five-day trial, the bankruptcy court issued an order that declared the debt of the Suns to the Kims was nondischargeable under §§ 523(a)(2)(A), (a)(4), and (a)(6), and awarded judgment in favor of the Kims in the amount of $1,042,206, plus prejudgment interest from May 17, 2007, through the date of the final judgment at 8% per annum, compounded annually, plus postjudgment interest at the rate set forth in 28 U.S.C. § 1961, plus costs (the "Appealed Order").[4] This appeal followed.[5]

---

[2] Complaint to Determine Dischargeability of Debt Under 11 U.S.C. § 523(a) of the Bankruptcy Code ("Complaint"), *in* Appendix by Appellants ("App.") at 22-46.

[3] Minutes of Proceeding dated August 6, 2013, *in* App. at 60.

[4] The Suns did not appeal the bankruptcy court's award for postjudgment interest and costs.

[5] On June 16, 2015, this Court entered an Order to Show Cause Why Appeal Should Not be Dismissed as Interlocutory because the Appealed Order did not dispose of all of the claims in the adversary proceeding. Specifically, the Plaintiffs' claim under § 523(a)(19) remained unresolved. On June 26, 2015, the Kims responded to the order by filing with the bankruptcy court a joint motion with the Suns, seeking dismissal of that claim without prejudice and a Rule 54(b) certification of the Appealed Order. On July 1, 2015, the bankruptcy court granted the motion. *Kim v. Sun (In re Sun)*, Adv. Proc. No. 12-1660 (Bankr. D. Colo. July 1, 2015) (Order Granting Joint Motion for (I) Dismissal of Plaintiffs'

(continued...)

## II. Appellate Jurisdiction and Standard of Review

This Court has jurisdiction to hear timely filed appeals from final orders, final collateral orders, and, with leave of court, interlocutory orders of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[6] The Kims timely filed a notice of appeal from the Appealed Order, and the parties have consented to this Court's jurisdiction by not electing to have this appeal heard by the United States District Court for the District of Colorado. The bankruptcy court entered a compliant Rule 54(b) order on July 20, 2015, making the Appealed Order a final order for purposes of appeal.[7] This Court, therefore, has appellate jurisdiction over this appeal.

Because multiple standards of review apply in this case, we will identify the applicable standard of review for each respective issue below.

## III. Analysis

The Suns' brief identifies fifteen points of error. These points can be consolidated into three issues: 1) whether the bankruptcy court erred in its nondischargeability findings; 2) whether the bankruptcy court erred in its

---

[5]    (...continued)
11 U.S.C. § 523(a)(19) Claim Without Prejudice; and (II) Rule 54(B) Certification, ECF No. 140). Recognizing that the July 1, 2015 order did not contain the requisite Rule 54(b) certification language, the parties filed a joint motion to amend the order. The bankruptcy court granted the motion on July 20, 2015. *Kim v. Sun (In re Sun)*, Adv. Proc. No. 12-1660 (Bankr. D. Colo. July 20, 2015) (Order Granting Joint Motion to Alter or Amend Order Granting Rule 54(b) Certification, ECF No. 144). The July 20, 2015 order is compliant with Rule 54(b) and cures the interlocutory issue. *See Heimann v. Snead*, 133 F.3d 767, 769 (10th Cir. 1998) ("Parties may not confer appellate jurisdiction upon us by obtaining a voluntary dismissal without prejudice of some claims so that others may be appealed.").

[6]    28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8001(e) (*now at* Fed. R. Bankr. P. 8005, effective Dec. 1, 2014); 10th Cir. BAP L.R. 8001–3 (*now at* 10th Cir. BAP L.R. 8005-1, effective Dec. 1, 2014).

[7]    Fed. R. Civ. P. 54(b); Fed. R. Bankr. P. 7054; *The Victoria Fry Children's Trust v. United States (In re Twin Lakes Real Estate, LLC)*, No. UT-07-055, 2008 WL 1961014, at *1 (10th Cir. BAP May 6, 2008) (a compliant Rule 54(b) order made order appealed from final for purposes of appeal).

damages calculation by incorrectly valuing the stock shares and including the monthly income stream as a bargained benefit; and 3) whether the bankruptcy court erred in awarding prejudgment interest and using the state rate of interest on federal claims. We address each issue in seriatim.

## A. The bankruptcy court's nondischargeability findings are not clearly erroneous.

1. The debt is nondischargeable under § 523(a)(2)(A).

Section 523(a)(2)(A) provides that the debtor is not discharged from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud. The bankruptcy court found the Kims had established the requisite elements for all three types of misconduct.[8] The Suns attack the bankruptcy court's findings as to justifiable reliance, fraudulent scheme, and intent. We review these findings for clear error.[9]

### a. The bankruptcy court's justifiable reliance finding is not clearly erroneous.

The Suns argue that the bankruptcy court applied an incorrect standard in determining the Kims justifiably relied on the Suns' misrepresentations and omissions.[10] They claim that justifiable reliance requires the Kims to use their

---

[8] An appellate court reviews a nondischargeability ruling under § 523(a) de novo, but reviews an appellant's claim that the evidence is insufficient to support the legal conclusion for clear error. *Wagner v. Wagner (In re Wagner)*, 527 B.R. 416, 429 (10th Cir. BAP 2015).

[9] *Id.* at 433-34 (review a bankruptcy court's determination of justifiable reliance for clear error); *Meyer v. Hobi (In re Hobi)*, No. WO-11-025, 2011 WL 5869488 (10th Cir. BAP Nov. 23, 2011) (intent to defraud under § 523(a)(2)(A) is a question of fact, which is reviewed for clear error); *Copper v. Lemke (In re Lemke)*, 423 B.R. 917, 919 (10th Cir. BAP 2010) (bankruptcy court's findings regarding a required element of a § 523(a)(2)(A) claim is a factual determination reviewed for clear error).

[10] The bankruptcy court correctly noted that the standard in determining whether the creditor's reliance was justifiable is a subjective one. The Suns argue the bankruptcy court applied an objective test because it described the standard as

(continued...)

-8-

senses, which they failed to do by not asking more questions.  They say the bankruptcy court failed to take this into account.  We disagree; the bankruptcy court did take this into consideration but found the unrebutted testimony regarding Korean culture supported a finding of justifiable reliance.[11]  In Korea, transactions of this type typically have one attorney representing both parties.  And between Korean friends and family, asking questions is a sign of distrust, and truth is the expectation.  Because evidence exists supporting the court's finding that the Kims justifiably relied on the Suns' false representations, that finding is not clearly erroneous.[12]

> b. The bankruptcy court's actual-fraud findings are not clearly erroneous.

The Suns argue that the bankruptcy court erred in holding that the debt was nondischargeable under § 523(a)(2)(A) as actual fraud because it did not expressly hold that there was a "fraudulent scheme" or "fraudulent intent."  We disagree.  The bankruptcy court found a fraudulent scheme when it stated:

> The above facts establish the Suns' ongoing pattern of fraud as part of a scheme to obtain the $900,000 from the Kims on the pretense of investing in the JCRS Property, and then use those funds for their own purposes.  After obtaining the initial $900,000 investment, the Suns continued to mislead the Kims over a period of several years . . . .  The Suns did not intend to proceed with the promised real property transaction.  Rather, they sold stock to the Kims, and later recaptured

---

[10]     (...continued)
"whether people with the Kims' mind set and experience were justified in relying on the Suns."  Appellants' Br. at 17.  We find this argument nonsensical because judging reliance based on an individual's mindset and experience is subjective, as opposed to judging reliance from an objective reasonable person standpoint.

[11]     Appealed Order at 11, *in* App. at 928, published at *Kim v. Sun (In re Sun)*, 515 B.R. 788, 800 (Bankr. D. Colo. 2014).  The bankruptcy court also found Mr. Sun's reputation in real estate and the parties' close relationship additional weight for finding the Kims' reliance justified.  *Id.*

[12]     Under the clearly erroneous standard, findings of facts are clearly erroneous only when the findings are unsupported by the record, or if the appellate court has a "definite and firm conviction that a mistake has been made."  *Holdeman v. Devine*, 572 F.3d 1190, 1192 (10th Cir. 2009) (internal quotation marks omitted).

the stock by threatening bankruptcy. The Suns then persuaded the Kims to accept an interest in a promissory note which was subordinate to a concealed senior lienor. Finally, they convinced [Mrs.] Kim to participate in S&B Nova's business . . . and . . . accept[] two smaller S&B Nova notes. The Suns failed to disclose these notes were subject to Hanmi Bank's senior position.[13]

The bankruptcy court found "fraudulent intent" based on the following actions by the Suns: 1) failing to observe corporate formality and treat the Kims as owners of YKSI; 2) selling the Mississippi Property without informing the Kims or seeking their approval; 3) depositing the $900,000 into a noncorporate account; 4) spending that money largely on non-JCRS expenses; 5) recapturing the YKSI shares by threatening bankruptcy; and 6) persuading the Kims to switch their investment to a note without telling them it was subordinate to a senior lien.[14] Contrary to the Suns' claims, the bankruptcy court made all the requisite findings for actual fraud, and these findings are not clearly erroneous.

    2. The debt is nondischargeable under § 523(a)(4).

    Section 523(a)(4), in pertinent part, excepts from discharge any debt for embezzlement or larceny. Embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."[15] Larceny is "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner."[16] The difference between these

---

[13]    *Sun*, 515 B.R. at 802.

[14]    These findings were made under the false representations' section of the Appealed Order, which the court specifically incorporated into its actual fraud analysis when it stated, "The Court finds the evidence as set forth above also indicates the presence of actual fraud by the Suns." *Sun*, 515 B.R. at 798-99, 802.

[15]    *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988) (internal citations omitted).

[16]    *Hernandez v. Musgrave (In re Musgrave)*, BAP No. CO-10-049, 2011 WL 312883, at *5 & n.39 (10th Cir. BAP Feb. 2, 2011) (quoting 4 Collier on

(continued...)

two types of misconduct is that, with embezzlement, the debtor initially acquires the property lawfully whereas, with larceny, the property is unlawfully obtained.[17]

The Suns argue that the bankruptcy court erred in finding that they had committed larceny because they were entrusted with the money pursuant to the second stock purchase agreement so there was no unlawful taking. We need not decide whether the Suns lawfully obtained the money because if it was not larceny, it was most certainly embezzlement.[18]

We also find the Suns' argument that the bankruptcy court failed to consider whether they intended to permanently deprive the Kims of their $900,000 unavailing. They argue that there was no intent to permanently deprive based on their repeated attempts to substitute adequate replacement property. Intent is a factual finding reviewed for clear error.[19] The bankruptcy court inferred that the repeated substitution of property was a part of the scheme to string the Kims along and avoid repayment. Because that inference was within the bounds of permissible choice, the court's intent finding is not clearly erroneous.[20] In sum, whether or not the money was lawfully obtained, the facts

---

[16]  (...continued)
Bankruptcy ¶ 523.10[2], 523-77 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009)).

[17]  *Id.* at *5.

[18]  4 *Collier on Bankruptcy* ¶ 523.10[2] at 523-77 ("In short, section 523(a)(4) excepts from discharge debts resulting from the fraudulent appropriation of another's property, whether the appropriation was unlawful at the outset, and therefore a larceny, or whether the appropriation took place unlawfully after the property was entrusted to the debtor's case, and therefore was an embezzlement.").

[19]  *Holaday v. Seay (In re Seay)*, 215 B.R. 780, 788 (10th Cir. BAP 1997).

[20]  The bankruptcy court's "decision need only be 'permissible,' not 'correct' and, if plausible in light of the record, it is not clearly erroneous even when the reviewing court would have made a different decision . . . [w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Wagner*, 527 B.R. at 429 (internal quotation marks and

(continued...)

support a conclusion that the debt was nondischargeable under § 523(a)(4).[21]

3. The debt is nondischargeable under § 523(a)(6).

The Suns argue the bankruptcy court erred by mixing together the elements of wilfulness and maliciousness. They claim that the bankruptcy court failed to find that the Suns knew that their conduct would cause the particularized injury allegedly suffered by the Kims. We disagree; the bankruptcy court found the Suns intentionally and deliberately misled the Kims in several transactions over several years and knew or should have known they would cause significant damage to the Kims. The Suns argue that the Kims' losses are from S&B Nova's failure to pay on the Nova Notes, which is not something the Suns knew would happen. The fact that Mr. Sun had previous dealings with S&B Nova and did not disclose the true nature of the S&B Nova transactions to the Kims supports the inference that the Suns knew the Kims would not get their investment back from S&B Nova. In sum, the facts support a conclusion that the debt was nondischargeable under § 523(a)(6).

**B. Damages**[22]

The bankruptcy court awarded damages of $1,042,206 to the Kims, which represented the benefits of their bargain with the Suns, less $109,794 for payments they received on the various Nova notes. The court found that in return for their investment of $900,000, the Kims bargained to receive $1,152,000 as of

---

[20]     (...continued)
citations omitted).

[21]     An appellate court is "free to affirm ... on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon" by the trial court. *Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir. 1988) (internal quotation marks omitted). The bankruptcy court did indicate that embezzlement had been established in footnote 53 of the Appealed Order.

[22]     Because the damages under § 523(a)(4) were subsumed by the damages under §§ 523(a)(2) and (a)(6), the Suns' argument that the § 523(a)(4) damages should be reduced by $57,137.60 is moot. Hereafter, all references to the damage award are to the damages under §§ 523(a)(2)(A) and (a)(6).

the date of the Appealed Order as follows: 1) a $500,000 short-term repayment; 2) a $400,000 ownership interest in the JCRS Property or JKSI (which represented a one-half interest); and 3) a $3,000 per month income stream that was worth a total of $252,000 based on payments starting six months after the investment through the month of the Appealed Order.[23]  The Suns argue that the damage award was erroneous because 1) it misapplied the benefit-of-the-bargain rule by ignoring evidence regarding the property's value at the time of the investment, and 2) the Kims never specifically requested damages based on the monthly income stream and it violated the Colorado Statute of Frauds to include damages for an oral promise that required performance more than one year later. We agree that the bankruptcy court erred in its damages analysis, but for different reasons than those advanced by the Suns.

Appellate courts review the amount of damages calculated by the trial court for clear error.[24]  The methodology the trial court used in calculating a damage award, however, is a question of law subject to de novo review.[25]

In this case, the bankruptcy court used the benefit-of-the-bargain rule to calculate damages.  The court concluded that the proper measure of fraud damages under § 523 in this case was Colorado's benefit-of-the-bargain rule, which entitles a plaintiff to receive "the difference between the actual value of the

---

[23]    *Sun*, 515 B.R. at 806-07.  We note that there are some math errors with the court's computation as to the monthly income stream (78 times $3,000 is not $252,000, it is $234,000; and there are 82 months between November 2007 and September 2014, not 78 months).  These math errors, however, are harmless given our decision that the benefit-of-the-bargain rule is not applicable.

[24]    *S. Colo. MRI, Ltd. v. Med–Alliance, Inc.*, 166 F.3d 1094, 1100 (10th Cir. 1999); *Central States Mech., Inc. v. Agra Indus., Inc. (In re Central States Mech., Inc.)*, 556 F. App'x 762, 774 (10th Cir. 2014).

[25]    *S. Colo. MRI, Ltd.*, 166 F.3d at 1100.

property and what its value would have been had the representation been true."[26]

Under Colorado law, however, a plaintiff who has been fraudulently induced to enter a contract "must elect either to rescind the entire contract to restore the conditions existing before the agreement was made, or to affirm the entire contract and recover the difference between the actual value of the benefits received and the value of those benefits if they had been as represented."[27] Election is necessary whenever the theories of recovery are inconsistent as is the case here.[28] The choice of remedies belongs to the one defrauded.[29]

In the Joint Pretrial Statement, the Kims listed the itemization of their damages as "$900,000, together with interest thereon at the rate of 8% per annum."[30] In their reply to the Suns' written closing arguments, the Kims stated that:

> [They were] not suing the Suns for specific performance in the underlying Douglas County case or in this Adversary Proceeding. . . . the Kims have no interest in being in the same corporation as the Suns, or in being partners in business with the Suns in any context, at any time. After having been defrauded by the Suns, and following four years of litigation, the Kims simply seek to obtain their $900,000, with pre-judgment and post-judgment interest, attorneys' fees and costs, and such other relief as the Court deems just and equitable under the

---

[26]     *Sun*, 515 B.R. at 805 n.61 (citing *Mascio v. Gronewoller (In re Mascio)*, 454 B.R. 146 (D. Colo. 2011)).

[27]     *Trimble v. City and Cty. of Denver*, 697 P.2d 716, 723 (Colo. 1985) (one seeking to remedy fraudulent inducement of a contract must elect either to rescind or affirm the contract) (superseded by statute on other grounds).

[28]     *Holscher v. Ferry*, 280 P.2d 655, 657 (Colo. 1955) (a remedy based on the theory of affirmance of contract is inconsistent with remedy arising out of the same facts based on theory of disaffirmance or rescission). *See also Altergott v. Yeager*, 543 P.2d 1293, 1297 (Colo. App. 1975) (action to affirm contract and sue for damages is an action in tort, while action to rescind the contract and sue for return of money paid is an action on contract); *Oilman Int'l, FZCO v. Neer*, Civil Action No. 10-cv-2810-PAB-BNB, 2012 WL1059987, at *1-2 (D. Colo. Mar. 29, 2012) (election of remedies doctrine implicated where tort and contract claims raised by plaintiff under same set of facts).

[29]     *Altergott*, 543 P.2d at 1297.

[30]     Joint Pretrial Statement at 9, *in* App. at 70.

circumstances.[31]

It is clear from the record that the Kims elected rescission of the contract. Under these circumstances, the proper measure of damages is what is required to restore the parties to their precontract position.[32] Thus, the bankruptcy court erred when it applied the benefit-of-the-bargain rule.[33] The Kims are entitled to the return of the money they paid ($900,000) plus interest,[34] less payments they received on the various Nova notes, which should be credited first to interest and then to principal. Because the dates of payments are not in the record, remand is necessary to calculate the Kims' damages.

## C. Prejudgment Interest

### 1. Relevant considerations for prejudgment interest award

Under federal law, "prejudgment interest may generally be awarded if (1) the award of prejudgment interest would serve to compensate the injured party, and (2) the award of prejudgment interest is otherwise equitable."[35] An award of prejudgment interest is a matter within the trial court's discretion and is reviewed

---

[31] Plaintiffs' Reply to Defendant's Amended Closing Argument at 9, *in* App. at 916.

[32] *Telex Corp. v. AiResearch Aviation Co.*, 460 F.2d 215, 218 (10th Cir. 1972) (noting Oklahoma Supreme Court's position that "rescission requires restoration of status quo and means to restore the parties to their former position") (internal quotes and citation omitted); *Black v. First Fed. Sav. & Loan Ass'n*, 830 P.2d 1103, 1114 (Colo. App. 1992) (in cases of fraudulent inducement in procuring a loan, the proper measure of damages is the total amount of money loaned, plus interest and less rental received).

[33] *Rice v. Hilty*, 559 P.2d 725, 727 (Colo. App. 1976) (if the plaintiff elects rescission, rather than ratification, benefit-of-the-bargain damages are not available); *Elliott v. Aspen Brokers, Ltd.*, 811 F. Supp. 586, 591 (D. Colo. 1993) (same). This conclusion renders the Suns' arguments regarding the Property's value and whether it was appropriate to include the monthly income stream as a bargained benefit moot.

[34] *See* Discussion C.3 below regarding interest.

[35] *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1566 (10th Cir. 1993).

for abuse of that discretion.[36]  An abuse of discretion occurs when the bankruptcy court's decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment.[37]

The Suns claim the bankruptcy court erred in awarding prejudgment interest because it did not analyze the requisite elements for prejudgment interest nor explain why prejudgment interest was appropriate in this instance.[38]  We disagree.  The bankruptcy court set forth the applicable standard to award prejudgment interest and then concluded that "the circumstances of this case warrant an award of prejudgment interest . . ."[39]  Although the court may not have stated its rationale under the prejudgment interest section of the Appealed Order, that conclusion, along with the numerous findings regarding the Suns' dishonesty and fraudulent conduct throughout the order, sufficiently explain why the court thought prejudgment interest was appropriate.[40]  We conclude that the bankruptcy court did not abuse its discretion in granting prejudgment interest.

2.      Prejudgment interest at the rate of 8% per annum, compounded annually

The bankruptcy court awarded prejudgment interest "as requested in the Kims' Complaint, at the rate of 8% per annum, compounded annually, pursuant to

---

[36]     *Id.*; *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1255 n.43 (10th Cir. 1988), implied overruling on other grounds recognized by *Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996).

[37]     *Lang v. Lang (In re Lang)*, 414 F.3d 1191, 1199 (10th Cir. 2005).

[38]     Appellants' Br. at 35.

[39]     *Sun*, 515 B.R. at 810.  The bankruptcy court implicitly concluded that a prejudgment interest award would serve to compensate the Kims and such an award was equitable when it recited the requisite elements for prejudgment interest and concluded it was warranted in this case.

[40]     *U.S. Industries*, 854 F.2d at 1257 (noting that an award of prejudgment interest is particularly appropriate in cases of investment fraud and that the equities favor an award of prejudgment interest where a defendant's behavior involves dishonest or fraudulent conduct).

Colo. Rev. Stat. § 5-12-102."[41]   That statute states:

> (1) Except as provided in section 13-21-101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:
>
> (a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,
>
> (b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.[42]

The Suns argue that the bankruptcy court erred by awarding Colorado's interest rate to federal claims, citing *Guides Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc*., 295 F.3d 1065, 1077 (10th Cir. 2002).[43]   The Suns' reliance upon *Guides* is misplaced because it is factually distinguishable.

In *Guides*, Africa House, a retail mall tenant, and Tseghe Foote, Africa House's sole shareholder, alleged that the landlord and mall management company discriminated against them, thus unlawfully interfering with their right to make and enforce a contract and to lease real property under 42 U.S.C. §§ 1981 and 1982.[44]   A jury found in favor of and awarded damages to both Ms. Foote and Africa House.   After trial, the district court set aside the verdict and damages in Ms. Foote's favor based on her lack of standing.   It then granted Africa House's

---

[41]   *Sun*, 515 B.R. at 810.   The Complaint neither mentioned Colo. Rev. Stat. § 5-12-102 nor requested a specified percentage for interest.   Complaint, *in* App. at 22-33.   In the Joint Pretrial Statement, under Itemization of Damages, the Kims asked for "$900,000, together with interest thereon at the rate of 8% per annum" without referencing a specific statute.   Joint Pretrial Statement at 9, *in* App. at 70. The Kims first referenced Colo. Rev. Stat. § 5-12-102 in their written closing arguments.   Plaintiffs' Written Closing Argument at 23, *in* App. at 884.

[42]   Colo. Rev. Stat. § 5-12-102.

[43]   Appellants' Br. at 34.

[44]   *Guides*, 295 F.3d at 1071.

motion for prejudgment interest, applying a 9% interest rate to be calculated from the date the action accrued pursuant to Colo. Rev. Stat. § 13-21-101. The Tenth Circuit reversed the district court's order granting prejudgment interest at the state rate from the date the claim accrued, and remanded for a determination of the rate of prejudgment interest and for a determination of the date or dates of accrual because "a federal rate of interest rather than the state rate applies where jurisdiction is based on a federal question . . . ."[45]

Here, like in most bankruptcy adversary proceedings, both federal and state law were implicated. The Kims sought a nondischargeability determination, which is an issue governed by federal law through the Bankruptcy Code.[46] They also sought a determination as to the existence and the amount of the underlying debt, which is an issue governed by state law.[47] Section 523 contains no standard or applicable interest rate for the allowance of prejudgment interest.[48]

In *U.S. ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc.*,[49] the Tenth Circuit reversed the denial of prejudgment interest on a Miller Act breach of contract action and awarded prejudgment interest using the interest rate stated in the state statute governing prejudgment interest at the time of the decision, rather than the applicable statutory rate at the time the debt was incurred. The Tenth

---

[45] *Id.* at 1077.

[46] *Grogan v. Garner*, 498 U.S. 279, 284 (1991) (nondischargeability determination governed by federal law).

[47] *Travelers Casualty & Surety Co. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007) (recognizing rule that state law governs the substance of claims in bankruptcy proceedings).

[48] The only federal statutory provision on the recoverability of interest in general is 28 U.S.C. § 1961. That statute, however, "relates only to interest recoverable on a judgment itself [and] has nothing to do with the question of whether prejudgment interest shall be allowed *as part of the compensation awarded to make the injured party whole*." *Wilson v. Burlington N. R.R. Co.*, 803 F.2d 563, 564 (10th Cir. 1986) (internal quotations omitted).

[49] 834 F.2d 1533 (10th Cir. 1987).

Circuit adopted the Fifth Circuit's reasoning that when there was no applicable federal law regarding prejudgment interest, it was appropriate to look to state law "'as a matter of convenience and practicality.'"[50] The Tenth Circuit concluded that it was "free to choose any interest rate which will fairly compensate the plaintiff for the delay in the receipt of payment."[51] Under this standard, the bankruptcy court did not err in looking to Colo. Rev. Stat. § 5-12-102 and choosing 8% for the rate of prejudgment interest. The record also contains evidence supporting the application of an 8% rate of interest – the Nova Notes contained an 8% interest rate and Mr. Kim testified to the same.[52] For the foregoing reasons, we conclude that the bankruptcy court did not abuse its discretion in awarding prejudgment interest at the rate of 8% per annum, compounded annually.[53]

3.    Adjustments for payments and accrued interest during the prejudgment interest period

The bankruptcy court awarded prejudgment interest on the entire damage award starting from the date of the parties' bargain (May 17, 2007) through the date of the judgment (September 12, 2014). The Kims, however, did not actually suffer the entire damage award at the beginning of the prejudgment interest period. Instead, their monetary injury was $900,000 from the date of the bargain until they received a payment from the Nova Notes. Thereafter, their monetary

---

[50]    *Id.* at 1541 (citing *United States ex rel Georgia Elec. Supply Co., v. U.S. Fidelity and Guar. Co.*, 656 F.2d 993, 997 (5th Cir. Unit B 1981) (quoting in part, *Louisiana & Arkansas Ry. Co. v. Export Drum Co.*, 359 F.2d 311, 317 (5th Cir. 1966)).

[51]    *Id.* at 1545 (internal quotations omitted).

[52]    Day 1 Trial Tr. at 101, *in* App. at 173; Promissory Notes, *in* App. at 1003-06.

[53]    The Kims' argument that prejudgment interest on the monthly income stream should be calculated periodically upon each payment's due date is moot given our decision to reverse the bankruptcy court's benefit-of-the-bargain damages award.

-19-

injury decreased with each payment. Conversely, their monetary injury increased annually due to compound interest. Thus, prejudgment interest should be calculated on the $900,000 until the first payment was received by the Kims, and thereafter on the appropriate debt balance adjusted for each successive payment received by them, subject to annual compounding of interest.

Although we generally afford the trial court great discretion in calculating prejudgment interest, we conclude the bankruptcy court applied an erroneous legal standard in its decision to calculate prejudgment interest on the Kims' entire damage award as of the date of the bargain.[54] And because the prejudgment interest calculation cannot be done without the dates of payments, which are not in the record, remand is necessary. We, therefore, remand for recalculation of prejudgment interest in accordance with this opinion.

## IV.    Conclusion

After carefully reviewing the record, we AFFIRM in part and REVERSE in part. Because the bankruptcy court's nondischargeability findings are not clearly erroneous, we affirm the court's determination that the Suns' debt to the Kims is nondischargeable under §§ 523(a)(2)(A), (a)(4) and (a)(6). Because the Kims elected rescission as their remedy, the proper measure of damages is restoration to the status quo by returning the money the Kims gave to the Suns plus interest, less any payments they received as a result of the parties' transactions. Thus, we reverse the bankruptcy court's benefit-of-the-bargain damages award and remand for calculation in accordance with this opinion. Because it was not an abuse of discretion to use the interest rate in the Colorado statute, we affirm the bankruptcy court's award of prejudgment interest at the rate of 8% per annum,

---

[54]    *Reed v. Mineta*, 438 F.3d 1063, 1067 (10th Cir. 2006) (reversing trial court's decision to calculate prejudgment interest on entire back pay award as of the date of termination and remanding with instructions to calculate interest in accordance with when plaintiff's monetary injuries were actually incurred, *i.e.*, incrementally as his wages would presumably have been earned but not paid).

compounded annually. We, however, reverse the bankruptcy court's decision to calculate prejudgment interest on the Kims' entire damage award from May 17, 2007, and remand for recalculation of prejudgment interest in accordance with this opinion. The award for postjudgment interest at the rate set forth in 28 U.S.C. § 1961 and costs was not challenged on appeal and remains undisturbed.